707 So.2d 1274 (1998)
Chad DRAGON
v.
Warren SCHULTZ, et al.
No. 97-CA-664.
Court of Appeal of Louisiana, Fifth Circuit.
January 14, 1998.
*1275 Fred R. Defrancesch, LaPlace, for Appellant Chad Dragon.
George Ann Hayne Graugnard, LaPlace, for Appellee Allstate Insurance Company.
Michael J. Remondet, Jr., G. Andrew Veazey, Lafayette, for Appellee McDonald's Corporation.
Before GRISBAUM, DUFRESNE and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Chad Dragon (Dragon), appeals from a judgment rendered in favor of defendants, Warren Schultz (Schultz), his insurer, Allstate Insurance Company and McDonald's Corporation (McDonalds), dismissing his suit at his costs. For the reasons which follow, we affirm.
This matter arises from a two vehicle accident which occurred in a privately owned parking lot on October 31, 1993. Dragon was driving into the parking lot to a McDonald's restaurant in LaPlace, Louisiana. Dragon was headed west, towards the drive-thru, when he approached an intersecting lane in the parking lot. Schultz was heading north on the intersecting lane of the parking lot and turning east, towards Dragon. Schultz testified that, as he turned, he saw Dragon heading toward him in the middle of the parking lot and Dragon was looking down and to the right. Schultz further testified that he then stopped his vehicle. Dragon did not look up until the last minute, swerved to avoid Schultz, but nevertheless hit Schultz's vehicle. Dragon testified that he was traveling within his lane and that, although he looked at his radio for a second, Schultz turned the corner into his lane and caused the accident. Dragon also alleged that Schultz's wide turn was made necessary by the improper design and maintenance of the McDonald's parking lot because the intersection in question had a wooden fence and a large bush on it, obstructing the view and causing the turning motorist, like Schultz, to need to make a wide turn into the oncoming lane.
Following a bench trial on August 23, 1996, the trial court rendered judgment on December 3, 1996, dismissing Dragon's suit. In his reasons for judgment, the trial court found that Schultz had begun his turn when he saw Dragon heading toward him and Schultz then stopped his vehicle. Dragon was looking down and looked up too late to stop his vehicle from hitting Schultz's car. The trial court found that Dragon's inattentiveness *1276 was the sole cause of the accident. It is from this judgment that Dragon appeals.
On appeal Dragon assigns three procedural errors. However, in argument, although not assigned as error, he argues that the trial court judgment was manifestly erroneous. In deference to Dragon we have considered all the issues, those assigned as error and those not assigned but argued, and find no grounds for reversal of the trial court judgment.
First, plaintiff argues that the trial court waited too long to issue a judgment. The case was heard on August 23, 1996 and judgment was rendered on December 3, 1996. La.R.S. 13:4207 requires that a trial judge render judgment in a case taken under advisement within 30 days of submission of the case. However, it does not provide that a judgment rendered later than that is invalid. Rather, La.R.S. 13:4210 provides the penalty for violating La.R.S. 13:4207 and it is solely a penalty to the judge and not invalidity of the judgment. We find no reversible error here.
Next, Dragon argues that Judge Snowdy, who had not heard the evidence and did not have the benefit of a transcript, could not make a proper ruling on his motion for new trial. While we agree that it may not be ideal to have different judges hear the trial and the motion for new trial, we do not find that fact alone to necessitate reversal of the trial court judgment. Judge Snowdy was able to review the record, memoranda and the depositions of Mary Schultz (the guest passenger in Schultz's vehicle) and Dragon. Upon the filing of a motion for new trial, it is the mover's burden to prove to the trial court that he is entitled to a new trial for one of the grounds listed in the Code of Civil Procedure. La.C.C.P. art. 1972 & 1973. Dragon did not meet this burden.
In Dragon's final assigned error, he argues that the trial court judgment is defective because, after taking the matter under advisement, the trial judge rendered judgment without a transcript of the proceedings. We note that almost all judge trial judgments are so rendered. We find this argument to have no merit.
In arguing his assigned errors, Dragon argues that the trial court judgment against him was inconsistent with the facts presented at trial. It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the fact finder's findings of fact in the absence of manifest error or unless they are clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra. When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings, because only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724;
Dragon contends that he was traveling into the parking lot in his lane of traffic. He also states that, although he did look down at his radio, his radio is right below the dashboard and he only looked down for an instant. He contends that the accident was caused because of the improper design of the parking lot, with a wooden fence and shrubbery on the right side of Schultz, requiring Schultz to pull into the oncoming lane in order to make his right turn. He also contends that Schultz did not stop prior to the accident, but was in fact turning into him.
The defense presented evidence to the contrary, that Schultz came up to the intersection and stopped before turning. At that point, Schultz could see the oncoming lane of *1277 traffic. Dragon had not yet entered the parking lot, but was coming down the street to turn into the parking lot. Schultz started his turn and saw Dragon coming directly toward him, partially in the left lane of travel. Schultz stated that he saw Dragon looking down. Schultz testified that he stopped his car but that Dragon did not look up in time to avoid the collision. Instead, Dragon looked up too late and, although he attempted to swerve to the right, he nevertheless hit Schultz's vehicle. This rendition was basically corroborated by Schultz's wife, the guest passenger in Schultz's vehicle. Also, Schultz presented the uncontroverted testimony of Douglas B. Robert, who was accepted as an expert traffic engineer. He testified that the parking lot where the accident occurred was acceptable in design. He found, by visiting the scene and taking measurements, that one approaching the intersection as Schultz was, despite the fence and bushes, had an adequate field of view of the right oncoming lane. He opined that the design of the parking lot and the Schultz's field of view had nothing to do with the cause of this accident. Rather, he stated that the accident was caused by driver error, specifically, the fact that Dragon was looking down and did not see Schultz until it was too late.
Dragon's version of the facts was expressly discounted by the trial court. The trial court expressly found that Dragon was encroaching on Schultz's lane of travel, that Schultz stopped upon seeing Dragon approaching and that Dragon did not see Schultz because he was looking down.
After reviewing the record, briefs and argument, we find that there was a conflict in the evidence on several key points and that the trial judge made evaluations of credibility and inferences of fact which were reasonable and based on the record as a whole. We find no manifest error in his findings.
Accordingly, for the reasons set forth above, we affirm the trial court judgment. Costs of appeal are assessed against Dragon.
AFFIRMED.