807 So.2d 934 (2002)
Mary MATTA and Sami Matta
v.
Charles J. SNOW, et al.
Nos. 01-CA-760 to 01-CA-763.
Court of Appeal of Louisiana, Fifth Circuit.
January 15, 2002.
*936 Steven B. Witman, Blaine M. Hebert, Metairie, LA, Attorney for Appellant American National General Insurance Company.
Jeffrey T. Reeder, Nolan P. Lambert, New Orleans, LA, Attorneys for Appellees Mary Matta and Sami Matta.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and THOMAS F. DALEY.
JAMES L. CANNELLA, Judge.
Defendant, American National General Insurance Company (American), appeals from a judgment in favor of the Plaintiffs, Mary Matta and Sami Matta, arising from an automobile accident. We affirm. On October 18, 1993, Mary Matta was driving her car westbound on Veterans Boulevard in Metairie, Louisiana when her vehicle was struck from the rear by a car driven by Defendant, Charles Snow (Snow).
On October 18, 1994, suit was filed against, Snow, his insurer, Progressive Insurance Company, and American, Plaintiffs liability and uninsured/underinsured (UM) carrier. American answered the suit denying liability and alternatively alleging the fault of Mary Matta and/or Snow. On May 10, 1996, the case was transferred and consolidated with three other pending cases filed by Mary Matta as a result of automobile accidents occurring in April of 1989, November of 1989 and August of 1991. In all the cases, the Plaintiffs were rear-ended by other defendants. The claims against Snow and Progressive were dismissed on December 3, 1998 because of a compromise and settlement. The other claims were also settled or dismissed in 1994 and 1998.
On November 2, 2000, trial proceeded against American. On November 16, 2000, the trial judge found in favor of the Plaintiffs and awarded Mary Matta $20,000 for past, present and future pain and suffering, $12,000 for medical expenses related to this accident and loss of income of $10,000 and awarded Sami Matta $5,000 for loss of consortium. The trial judge specifically found that the accident aggravated Mary Matta's pre-existing condition.
After a motion for new trial, the judgment was amended on February 12, 2001 to order a credit against the total amount of damages in America's favor in the amount of $10,000, the primary insurance policy's limits. The judgment further limited American's liability to its policy limits of $25,000, court costs and legal interest from the date of judicial demand.
On appeal, American contends that the trial judge erred in failing to grant it credit against the judgment award for the amounts of insurance coverages available and paid to Plaintiffs in settlements for the other three accidents. American further asserts that the damage award is excessive.
American contends that it is entitled to an offset because the other insurance benefits for the other accidents exceed the amounts awarded to Plaintiffs in this case. It argues that even the Plaintiffs admitted in their motion for consolidation that this suit involves common issues of fact with the other three suits and that the injuries are so related that justice required consolidation. Consequently, since the injuries are so interrelated, American should not be cast for the damages in this case.
*937 The evidence shows that Mary Matta injured her neck and back in the first accident in 1989 and suffered either a reinjury to her back and neck or an aggravation in the next two accidents. Before she was able to heal following the third accident, she was struck again in the rear. Mary Matta claims that after the October accident, her pain became so difficult to manage that, in December of 1993, she was forced to quit her job because she could no longer perform her duties as a bank teller/supervisor. Part of her job required carrying and lifting heavy sacks of coins. Before this accident, she testified that she could perform 80% of her job. After, she could not bend her neck and/or back. She also had knee swelling. Complicating these conditions were her other unrelated physical problems, including a chronic inflammatory disorder of her kidneys and the development of pulmonary obstructive disease. However, for her neck and lumbar spine pain, this accident was, in effect, "the straw that broke the camel's back."
Following the 1989 accident, Mary Matta was treated by several orthopedic doctors, a neurosurgeon and a neurologist. She underwent nerve blocks on her cervical spine from C-3 to C-7 in 1990. A Magnetic Resonance Imaging (MRI) test of her neck was normal. However, she continued to work despite pain and some compromise to her ability to function. At that time, her husband, Sami Matta, assumed more of her responsibilities at home and the couple's sex life deteriorated. After the 1991 accident, she continued to have functional disability and restrictive movement. She continued to be treated for these complaints. In 1992 and early 1993, Mary Matta changed health plans and started being treated by a team of Ochsner doctors. In June of 1993, she had an MRI of the lumbar spine, which disclosed mild bulging discs at L3-4 and L4-5. After the October accident, Mary Matta stated that the pain in her neck and low back worsened. In 1997 another MRI and a Computerized Axial Tomography (CT) scan showed severe bulging of the lumbar discs at L3-4 and L4-5.
Mary Matta's rheumatologist, Dr. Robert Quinet, and a neurosurgeon, Dr. John Jackson, testified by deposition. Dr. Quinet treated Mary Matta in July of 1993 for joint pain, particularly at the base of her thumb and her right hip. He noted that she was referred to him by her kidney doctor. He stated that she intermittently complained of low back pain. Although she did not complain of neck pain, on examining her in July of 1993, he found cervical tenderness. Dr. Quinet stated that Mary Matta started specifically complaining of neck pain after the October accident and she was wearing a neck brace in her November visit. In December and January she was having problems with her right wrist/thumb and knee. In February, her complaints included neck and back pain. At this point, she was using the collar, doing exercises and using heat. He did not focus on her back pain because she was seeing other doctors for this complaint. Dr. Quinet stated that, although he could not "establish medical causation" for Mary Matta's neck complaint, "[i]t was the type of complaint that you might expect after being in that type of auto accident. So empirically I would link the two events."
Dr. Jackson testified that she was referred to him by Dr. Robert McCord in March of 1996. She related experiencing a sharp, constant, radiating pain from her low back into her right hip, right leg and knee and numbness of both legs. She stated that her right leg would give out and that walking and driving aggravated it. Her neck pain radiated into her right shoulder and right arm and thumb. She had frequent headaches and was unable to lift anything heavy. She related her history *938 of auto accidents, but his records did not mention the October accident. Mary Matta testified that she told him, but it was not recorded.
After reviewing her records, he advised her to have further tests. In March of 1997, a cervical MRI showed normal results. However, her lumbar spine indicated severe "spinal stenoses" at the L4-5 level. The test indicated that the caudal sac was severely compromised by the bulging discs and by "hypertrophic ligamentation flavum" further compressing the caudal sac. Further, there was a mild bulge at the L3-4 and L5-S1 levels. Dr. Jackson strongly recommends surgery to remove the L4-5 disc bilaterally and to stabilize the spine by fusion. He also discussed a new procedure that has a better result that uses a titanium cage to interweave with the bony structures. Dr. Jackson concluded that the 1989 accident started the problems that progressed over the years after the other accidents. He testified that she never got well and that the last accident worsened her condition.
La.C.C. art. 2315 provides that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La.C.C. art. 2316 states that every person is responsible for the damage he occasions, not merely by his act, but by his negligence, his imprudence or his want of skill. Plaintiffs bear the burden of proving every element of their case by a preponderance of the evidence, that is, whether it is more likely than not, that the harm was caused by the tortious conduct of the defendant. Davis v. Louisiana Power & Light Co., 00-13 (La.App. 5th Cir.5/17/00), 762 So.2d 229, 233-234; Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). In determining whether a defendant's conduct is negligent, the courts apply the duty/risk analysis. Davis, 762 So.2d at 233; Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). This requires the following findings:
1. That the conduct was a cause in fact of the resultant harm;
2. That a defendant owed plaintiff a duty;
3. That the duty owed was breached by a defendant;
4. That the risk of harm was within the scope of the breached duty.
Davis, 762 So.2d at 233.
Negligent conduct is a cause-in-fact of harm to another, if it was a substantial factor in bringing about that harm. Id.; Socorro v. City of New Orleans, 579 So.2d 931, 939 (La.1991).
The Louisiana Supreme Court stated, "The defendant's liability for damages is not mitigated by the fact that the plaintiffs pre-existing physical infirmity was responsible in part for the consequences of the Plaintiff's injury by the defendant. It is clear that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct." Lasha, 625 So.2d at 1005.
On appellate review, the court's function is to determine whether the findings of the trier of fact were clearly wrong or manifestly erroneous. Brown v. Seimers, 98-694 (La.App. 5th Cir.1/13/99), 726 So.2d 1018, 1021, writ denied, 99-0430 (La.4/1/99), 742 So.2d 556; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Brown, 726 So.2d at 1021; Rosell, 549 So.2d at 844. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether its conclusion *939 was a reasonable one. Brown, 726 So.2d at 1021; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Brown, 726 So.2d at 1021; Stobart, 617 So.2d at 882. Only where the documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, may the court of appeal find manifest error, even in a finding purportedly based upon a credibility determination. Brown, 726 So.2d at 1021; Rosell 549 So.2d at 844-45.
The trial judge found that the October accident aggravated the pre-existing condition of Mary Matta. Based on the evidence, we find that the trial judge was not manifestly erroneous in her determination. Furthermore, we find no legal or factual support for American's claim for credits from insurance policies that were available from the other three accidents. American must take Mary Matta, who had a history of neck and back problems before the October accident, as it finds her. Thus, the trial judge did not err in denying this claim.
American asserts that the trial judge erred in the amount of the general damage award, the amount of medical expenses and the loss of income award. It contends that this was a four-month soft tissue injury and was a slight aggravation to her preexisting condition. American further contests the award of loss of consortium to Sami Matta.
The standard for the review of damage awards is whether, after an articulated analysis of the facts, the court finds the trial judge abused her great discretion. Davis, 762 So.2d at 236; Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La. 1993). This determination is made with consideration to the individual circumstances of the injured plaintiff. Davis, 762 So.2d at 236; Theriot, 625 So.2d at 1340. After an analysis of the facts and circumstances peculiar to the particular case and the particular plaintiff, an appellate court may conclude that the award is inadequate (or excessive). Davis, 762 So.2d at 237; Theriot, 625 So.2d at 1340. Only then does the appellate court resort to prior awards, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Davis, 762 So.2d at 237; Theriot, 625 So.2d at 1340.
American focuses on Mary Matta's neck complaints, the lack of objective findings on the cervical medical tests, and on her other medical conditions. However, the documentary evidence and testimony show that her neck and back pain became much worse after the October accident. Although her cervical tests did not show any impingement at the time of the last cervical MRI, the bulging discs in her lumbar spine progressed from mild to severe, causing impingement on the nerves and spinal instability. Thus, we find no abuse of discretion in either the general award or the award for medical expenses.
Mary Matta was employed as a bank supervisor when she was injured in this accident. She was forced to stop working in December of 1993 due to the physical restrictions from the pain in her neck and back. Her tax returns were introduced into evidence from 1991 until the date of trial. Prior to 1994, she made an average of $14,000 per year. In 1994, she made a little more than $500. She has not earned any work related wages since 1994. In 1995, Mary Matta applied for social security disability. On the application she stated that she was prevented from working due to "coughing a lot and *940 shortness of breath." However, she also lists back pain under "Sickness or Injury." The senior attorney on her appeal from a denial of benefits granted her disability status. He wrote in his opinion that she presented evidence of chronic low back and neck pain, along with the other physical disorders, and that all of them cause her to be disabled.
Mary Matta testified that she continued to work after the October accident until the pain became so severe that she could not bend or lift and thus, could not perform her duties. The trial judge awarded Mary Matta $10,000 in lost income Based on the evidence, we find that the trial judge did not abuse her discretion in the award.
Finally, American contends that the trial judge erred in awarding Sami Matta damages for loss of consortium because he did not testify and because the award was not supported by the evidence. Plaintiffs contend that he was available, but because of the trial judge's time constraints, it was thought that Mary Matta's testimony would be sufficient. The record reflects that the trial judge had a tight schedule. Further, the trial judge did not penalize Sami Matta for not testifying, because she was obviously aware of the reason. The issue then, is whether Mary Matta's testimony supports the amount of the award.
Mary Matta testified that her lifestyle changed significantly for the worse after this accident. She had to quit work and was unable to do her housework or participate in her teenager sons' activities. Her husband had already been helping with housework and the couple's sexual relations were poor. However, after this accident, her husband had bypass surgery and still had to care for her despite his own infirmities. For example, while he was in the hospital, he slept in the chair and made her sleep on the bed because of her neck and back pain. Based on the evidence, we find that the award, though on the high side, is not an abuse of the trial judge's discretion.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of the appeal are to be paid by American.
AFFIRMED.