846 So.2d 49 (2003)
Glenn J. FARRELL
v.
Christopher PIERRE and First American Insurance Company.
No. 02-CA-1136.
Court of Appeal of Louisiana, Fifth Circuit.
April 8, 2003.
*50 Kenneth E. Pickering, Pickering & Cotogno, New Orleans, LA, for Appellant.
*51 Andrew A. Lemmon, Lemmon Law Firm, LLC, Hahnville, LA, for Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
In an automobile accident case, the Defendant, Christopher Pierre, appeals from a judgment in favor of the Plaintiff, Glenn Farrell. We affirm.
On October 27, 2000, the Plaintiff was traveling in the eastbound lane of Highway 631 on his way to a local business. When he reached his destination, he used his turn signal and stopped prior to executing the turn, because of construction on the roadway which narrowed the entryway. He also saw a car that he thought was coming out of the parking lot. The Defendant, in his car behind the Plaintiff, failed to see the Plaintiff stop and struck the Plaintiff's van. He continued around the Plaintiff's car before stopping. After the collision, the Defendant repeatedly drove forward and back, as though he was attempting to get away. The Plaintiff got out of his car to talk to him before he could flee. As he stepped on the running board of the van, the Defendant's car backed up striking the Plaintiff's driver's side door knocking the Plaintiff down. The Plaintiff fell on his left knee. The Defendant shouted that his brakes were not working right, jumped out of his car and ran away. The police found him later in nearby Boutte, Louisiana. His statement of the events was noted in the accident report.
The Plaintiff filed suit against the Defendant and his insurer, First American Insurance Company (First American) on June 20, 2001. A bench trial was held on May 28, 2002. The Defendant did not appear at trial. No reason was given by counsel who was representing him and First American. Prior to calling the first witness, the parties agreed to take Dr. Earl J. Rozas' deposition at the end of the testimony, in lieu of live testimony, even though the doctor was available to testify that day. The case was held open for that purpose. The trial judge gave the Plaintiff 60 days to submit the deposition to him.
Dr. Rozas' deposition testimony was taken June 17, 2002 and received by the trial judge on July 19, 2002. He rendered a decision on July 24, 2002 in favor of the Plaintiff in the amount of $55,000 in damages plus $750 for Dr. Rozas' expert witness fee. The trial judge allocated $46,115 for general damages, $1,035 for past medical expenses and $7,850 for future surgery. First American satisfied its policy limits of liability of $10,000 of the judgment, plus interest and costs.
The Defendant appeals the judgment.[1] He first contends that the Plaintiff failed to prove causation of the injury because Dr. Rozas' deposition testimony was submitted untimely and/or was not introduced into evidence. Next, he asserts that the trial judge should have applied a negative inference against the Plaintiff for failing to call the passenger in his van who was an eyewitness. Third, the Defendant asserts that the Plaintiff failed in his burden of proof. Fourth, he argues that the trial judge erred in his credibility determination. Last, the Defendant contends that the award is excessive.
MEDICAL PROOFTIMELINESS OF DEPOSITION
The Defendant claims that the Plaintiff failed to prove his injury and its causation because the trial judge erred in considering Dr. Rozas' deposition, filed 52 *52 days after the trial. He asserts that the deposition was filed untimely and/or was not introduced into evidence. Pierre asserts that the deposition was filed untimely because it was submitted longer than 7 to 10 days after the live testimony concluded. He cites the discussion at the beginning of the trial during which the parties agreed to depose the doctor after the trial in lieu of his live testimony. During that discussion, the Plaintiff stated that he would obtain the deposition within 7 to 10 days. However, at the conclusion of the trial, the trial judge gave the Plaintiff 60 days to submit the deposition, during which time he would consider the case continued. This was reflected in the minutes. Counsel for Defendant did not object.
The Defendant also argues that the case was deemed "submitted" fifteen days after the trial under La.Sup.Ct.R.G. § 2, Rule 13:4207.1 and that under La.R.S. 13:4207, the trial judge was mandated to render a judgment within 30 days from the time that the trial was concluded or the matter "submitted." According to these legal requirements, the deposition had to be submitted by June 12, 2002 and the judgment rendered by July 12, 2002. Thus, the Defendant concludes that the trial judge erred in considering the deposition because the case had been automatically deemed submitted on the fifteenth day after the trial ended.
R.S. 13:4207 states that "in all cases taken under advisement" a judge shall render judgment within 30 days from the time the cases are submitted for their decision. La.Sup.Ct.R.G. § 2, Rule 13:4207.1 states:
(a) When Submitted. A case or other matter shall be considered as fully submitted for decision to the trial judge, and should be decided, immediately upon the conclusion of trial or hearing, and judgment signed expeditiously thereafter.
In an exceptional case when the record has been left open upon the conclusion of trial or hearing for the filing of testimony by deposition and/or documents, such depositions and/or documents shall be filed within fifteen days and the case or matter shall be considered as fully submitted, and should be decided, immediately after such filing or the lapse of fifteen days, whichever occurs sooner.
Under the Supreme Court rules and R.S. 13:4207, the trial judge should have required the deposition to be filed within 15 days of the trial, and should have rendered the decision within 30 days. However, in Dragon v. Schultz, 97-664, p. 4 (La.App. 5th Cir.1/14/98), 707 So.2d 1274, 1276, we held that, although La.R.S. 13:4207 requires a trial judge to render a judgment in a case taken under advisement within 30 days of submission of the case, it does not provide that a judgment rendered later than that is invalid. "Rather, La.R.S. 13:4210 provides the penalty for violating La.R.S. 13:4207 and it is solely a penalty to the judge and not invalidity of the judgment." Id. The events here are analogous. We decline to punish the Plaintiff in this case for the trial judge's violation of a rule that is designed, inter alia, to prevent hardship to the litigants that may result when the rendition of a judgment is unjustifiably delayed. That would be a particularly unfair result when counsel for the Defendant acquiesced in the matter. Here, no one was prejudiced by the delays set by the trial judge and the trial judge rendered a judgment within five days of receiving the deposition. Counsel for the Defendant did not object at trial when the trial judge gave the Plaintiff a longer period than permitted by the Supreme Court rule, or at any other time, although he had ample opportunity to do so. Furthermore, the Defendant *53 participated in the deposition without demurrer. We find that the Defendant waived any objection to the delay. We further find that the parties agreed that the deposition would be accepted into evidence when the trial judge received it. Thus, we find that the deposition was properly considered by the trial judge.
NEGATIVE INFERENCE
The Defendant argues that the trial judge should have drawn an adverse inference against the Plaintiff when the Plaintiff failed to call his passenger as a witness at trial. The Defendant also contends that an adverse presumption from his absence does not apply when the Plaintiff fails to make a prima facie case.
We explained the adverse presumption rule in Dennis v. Allstate Ins. Co., 94-305, p. 5 (La.App. 5th Cir.10/25/94), 645 So.2d 763, 765, as follows:
When a defendant in a civil case can by his own testimony throw light upon matters at issue which are necessary to his defense and peculiarly within his own knowledge, and he fails to go upon the witness stand, the presumption is raised, and will be given effect, that the facts as he would have then do not exist.
In Taylor v. Entergy Corp., 01-0805, p. 15 (La.App. 4th Cir.4/17/02), 816 So.2d 933, 941, the court explained:
The "uncalled witness" rule has been defined as an adverse presumption that arises when "a party has the power to produce witnesses whose testimony would elucidate the transaction or occurrence" and fails to call such witnesses. 19 Frank L. Maraist, Louisiana Civil Law Treatise: Evidence and Proof, § 4.3 (1999). A party's failure to call such witnesses gives rise to the presumption that "the witnesses' testimony would be unfavorable to him." Id. Although the advent of modern, liberal discovery rules has been recognized to limit this rule, it "remains viable." Id. Indeed, this court has recognized this rule applies when, as in this case, witnesses with peculiar knowledge of material facts pertinent to the case are not called. We have also noted that "[t]he court may consider this presumption as it would any other relevant evidence in the case." [Citations omitted]
In this case, the Plaintiff testified to the facts of the accident. The Defendant did not appear at trial to contradict his testimony, nor were there any other witnesses that disputed the Plaintiff's version. The Plaintiff was not required to produce the passenger to support his contention that he fell when the car door struck him causing him to injure his knee. His testimony was uncontradicted by the evidence. Thus, the adverse presumption rule does not apply in this case.
CAUSATION
The Defendant contends that the trial judge committed manifest error in concluding that the Plaintiff's injury was caused by the accident. He argues that the trial judge erred in crediting the testimony of the Plaintiff and Dr. Rozas.
On appellate review, the court's function is to determine whether the findings of the trier of fact were clearly wrong or manifestly erroneous. Matta v. Snow, 01-760, p. 7 (La.App. 5th Cir.1/15/02),807 So.2d 934, 938; Brown v. Seimers, 98-694, p. 6 (La.App. 5th Cir.1/13/99), 726 So.2d 1018, 1021, writ denied, 99-0430 (La.4/1/99), 742 So.2d 556; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Matta, 01-760 at p. 7, 807 *54 So.2d at 938; Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Rosell, 549 So.2d at 844. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether its conclusion was a reasonable one. Matta, 01-760 at p. 7, 807 So.2d at 938; Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).
In Calcagno v. Kuebel, Fuchs Partnership, 01-691, p. 11 (La.App. 5th Cir.11/14/01), 802 So.2d 746, 752, we stated:
A plaintiff in a personal injury lawsuit must prove causation by a preponderance of the evidence. Dabog v. Deris, 625 So.2d 492 (La.1993). The plaintiff is aided in this endeavor by the legal presumption that a medical condition producing a disability resulted from a preceding accident if: 1) the injured person was in good health prior to the accident; 2) the disabling condition manifested itself shortly after the accident; and, 3) medical evidence indicates that there is a reasonable possibility of a causal connection between the accident and the disabling condition. Id at 494, citing Housley v. Cerise, 579 So.2d 973, 980 (La.1991).
According to the Plaintiff, after the collision, the Defendant drove back and forth in an effort to get away. The Plaintiff was worried that he would flee before he could get the Defendant's license number. As the Plaintiff exited the van, he stepped on the running board. At that moment, the Defendant backed up his car, striking the driver's side door. Although the Defendant contends that the Plaintiff's testimony was inconsistent, the Plaintiff stated in various portions of his testimony that he fell. He also stated that he "twisted" his knee "on the running board." The Plaintiff's testimony was not inconsistent or contradictory.
The Plaintiff further testified that his knee was problematic, but he did not report it to his family doctor, Dr. David Vial, until his scheduled visit for his high blood pressure on November 11, 2000. He waited to seek medical help because he thought the knee pain would get better. The doctor's reports show that the Plaintiff reported injuring the right knee in an accident and that the knee was swollen when he examined it. Dr. Vial x-rayed the knee, prescribed medications and placed the knee in a brace. At the next visit in December of 2000, the knee had not improved and Dr. Vial recommended injections if it did not get better. Rather than continue treatment with Dr. Vial the Plaintiff decided to consult Dr. Rozas, an orthopedic surgeon, who had treated him in the past for other conditions. However, because of his poor financial condition, he did not see Dr. Rozas until April of 2001. The Plaintiff explained that he is disabled, lives on social security disability income and does not have health insurance. In January of 2001, the Plaintiff's car was struck by a truck that pushed his car onto the shoulder of the road as it attempted to turn. The Plaintiff denied any injuries from that accident.
Dr. Rozas diagnosed a complex tear to the medial meniscus. He stated that this type of injury is caused by a twisting motion and that it was more probable than not that the October 27, 2000 accident described to him by the Plaintiff caused the injury. Dr. Rozas has treated the Plaintiff for many years for other orthopedic problems. He supported the Plaintiff's claim that the Plaintiff did not have a history of left knee injury prior to the accident. Although the Plaintiff delayed seeking treatment from both doctors, he explained that he waited to report the injury to Dr. Vial when he went for his *55 blood pressure checkup because he thought the injury would heal without medical treatment. He waited to see Dr. Rozas until several months later because of his poor financial condition. His explanations were plausible. In addition, his symptoms were consistent with a complex tear and they manifested shortly after the accident.
The evidence on causation was not conflicting and the testimony in this regard was credible. In addition to the absence of contrary evidence, the presumption of causation applies in this case and the Defendant did not rebut the presumption. Thus, we find that the trial judge did not err in finding that the accident herein caused the injury to the Plaintiff's knee.
AMOUNT OF DAMAGES
The Defendant contends that the damage award is excessive and that the trial judge abused his discretion in assessing court costs against him. The standard for the review of damage awards is whether, after an articulated analysis of the facts, the appellate court finds that the trial judge abused his great discretion. Matta, 01-760 at p. 8, 807 So.2d at 939; Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). This determination is made with consideration to the individual circumstances of the injured plaintiff. Matta, 01-760 at p. 9, 807 So.2d at 939; Theriot, 625 So.2d at 1340. After an analysis of the facts and circumstances peculiar to the particular case and the particular plaintiff, an appellate court may conclude that the award is inadequate (or excessive). Matta, 01-760 at p. 9, 807 So.2d at 939; Theriot, 625 So.2d at 1340. Only then does the appellate court resort to prior awards, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Matta, 01-760 at p. 9, 807 So.2d at 939; Theriot, 625 So.2d at 1340.
Dr. Rozas testified that the accident caused a complex tear to the medial meniscus of Plaintiff's left knee. The injury involved "multiple tears of the entire posterior and posterior lateral aspect of the medial meniscus." The doctor recommends arthroscopic surgery to repair the damage. The surgery is generally successful and the recovery period for this surgery is not long. The Plaintiff will have a 5% disability to the left leg after the surgery. The Plaintiff testified that his leg has been painful since the accident and that he was unable to afford the surgery prior to trial.
The Plaintiff suffered a complex injury to the left knee necessitating surgery. He has suffered pain and swelling from October of 2000 to the date of trial, a period of 19 months, and he will continue to have pain until he has the surgery. Based on the evidence, we find no abuse of discretion in the amount of damages awarded for the Plaintiff's injury. We further find no abuse of the trial judge's discretion in the assessment of trial costs.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of this appeal are to be paid by the Defendant.
AFFIRMED.
NOTES
[1] The Defendant is represented by counsel for First American.