| .MARION F. EDWARDS, Judge.
Plaintiff/appellee Cheryl Ellsworth filed suit in the Twenty-Fourth Judicial District Court against Robert Harrison and his insurer, Allstate Insurance Company, for injuries sustained in an accident on the Causeway Bridge on August 30, 2001. The petition alleged that Ms. Ellsworth was a passenger in a vehicle owned and operated by Mr. Farrell Porche, when Harrison swerved out of the left lane of travel into the right, colliding with the Porche vehicle. At the commencement of trial, Harrison was dismissed as a party, and Ellsworth stipulated that the monetary value of her damages would not exceed Fifty-Thousand Dollars. Trial proceeded against Allstate, at the conclusion of which the court found that Harrison was at fault. Allstate was found liable for general and special damages in an amount that would exceed the stipulation, and accordingly, limited the judgment to $50,000.00 plus interests and costs.
Allstate appeals only the quantum portion of the judgment dealing with injuries to Ellsworth’s knee.
Is At trial, Ellsworth testified that in the accident, she suffered a chipped tooth, scratched the front part of her eye, smashed her left knee into the dashboard, and her right shoulder hit the glass. She was taken by ambulance to East Jefferson Hospital’s emergency room. She was later treated for her knee and shoulder injury at Tulane University, with Dr. Michael Bruni. Thereafter, she began treatment with Dr. Raul Diaz, an orthopedic surgeon. Dr. Diaz recommended steroid injections for her shoulder and knee, but because of the side effects, Ellsworth did not want to have those injections. Dr. Diaz also recommended arthroscopic surgery, and while she did not really want surgery, she has decided to try it because her knee has gotten worse.
In connection with the accident, she also went to her dentist, Dr. Glen Schmidt, for her chipped tooth, although she has not gotten it fixed, and she still has a scar on her lip. Ellsworth also went to the Retinal Institute of Louisiana for the scratches on her cornea. She was formerly very active, and was a personal fitness coach and general manager at Salvation Studio. Because of her injuries, she is unable to train as she used to, and can only run for about five minutes without extreme pain. She now does different types of therapeutic exercise, such as yoga.
On cross-examination, counsel pointed out that in her deposition, Ellsworth had stated she had missed two months of work after the accident, while at trial she testified that she had missed work and taken off sometimes, but was not out during that entire period. She testified at trial that she left her employment because she was not able to use the facilities, and she had a conflict with the new manager. Further, she was living in Abita Springs and it was a difficult commute. She began selling real estate in August 2002.
Ellsworth testified at trial that her right shoulder has not improved, but rather has gotten worse. Defense counsel pointed out that she had previously stated in her deposition that after the accident, she had problems with both shoulders, but the 14pain in her right shoulder lasted about one month, while her left shoulder only hurts when she sleeps on it. Ellsworth responded that since the deposition, her shoulder has gotten worse. As for her knee, she testified that it was swollen at *1177 the emergency room, where she was given ice to put on it. She could walk on it. Dr. Diaz ordered an MRI, telling her that her condition was something she had to live with for some time. Therefore, she did not return to him until four months after the MRI was taken.
Rusty Roussel, general manager at Salvation Studio, testified regarding Ells-worth’s wages at the time of the accident, referring to documents not introduced into evidence. Roussel testified that Ellsworth worked 14 hours the week of August 13-19; the week after the accident she worked 8 hours; and then she worked 31, 28/&, and 23]6 hour weeks in September. Ellsworth stipulated at trial that she worked more hours after the accident than just before, testifying later in rebuttal that she was paid for hours that she did not actually work. She also stated at that point that she was the only one who would stay and work with Roussel.
The deposition of Dr. Diaz, an orthopedist, was admitted into evidence. Dr. Diaz stated that Ellsworth’s initial complaints were limited to the right shoulder and left knee, which injuries she attributed to the accident. At that time, the physician believed that Ellsworth suffered from chon-dromalacia of the left knee and a bursitic condition of the right shoulder. He ordered an MRI and prescribed anti-inflammatory drugs. Later, Dr. Diaz believed she suffered an impingement on her right shoulder, and it is probably in about the same condition as it was in December, 2001, when he first saw her. However, he believed the shoulder problem could be cured with steroid injections.
Regarding her left knee, the doctor felt Ellsworth had suffered a traumatic contusion, probably the accident, leading her to develop chondromalacia. | ¡¿However, because she was physically active, she may have been more likely to develop that condition than some others. She needs a diagnostic arthroscopy to delineate the extent of the problem, and then an OATS procedure, a more aggressive surgery, to replace damaged cartilage. His fee for the arthroscopy would be between $5000.000 and $7000.00, and the hospital bills would run about $10,000.00. For the OATS procedure, his fee would be $6000.00-$7000.00, plus an assistant’s fee of about 25% of that amount. The hospital costs would be about $12,000.00-$13,000.00. Although on occasion her knee did not pain her as much as other times, the doctor felt that during the course of his treatment, her condition has not basically changed. Dr. Diaz opined that based on her history of having no knee complaints previous to the collision, he believed the accident to be the cause of her problems.
The deposition of Dr. Terry Habig, an orthopedic surgeon who examined Ells-worth for the defense, was also admitted. Dr. Habig examined her in September 2002, more than two years after the accident. She had crepitus in both knees, with the left knee somewhat worse. His interpretation of the MRI was that Ellsworth suffered from mild chondromalacia, and based on the history of the accident, it was probably caused by injury to the kneecap. This condition is sometimes helped by arthroscopic surgery, and whether or not to do surgery is a judgment call. Dr. Habig did not think an OATS procedure was necessary. Most people with chondro-malacia heal on their own, with physical therapy.
In granting judgment, the trial court found that the hospital records indicated that Ellsworth initially complained of arm and knee pain, injuries consistent with deployment of the air bags. She also went to her dentist because her mouth was bleeding, and to her eye doctor. The trial court discussed Ellsworth’s testimony regarding *1178 her shoulder injuries, and found it to be not credible, holding that the most believable statements were made by Ellsworth at the emergency room. The | (¡court felt that her trial testimony regarding her lost wage claim and injury to her shoulder was completely changed from her earlier deposition, and that she contradicted herself. However, the court believed that an MRI of Ellsworth’s knee was consistent with the diagnosis of chondromalacia. The court gave more weight to the testimony of Dr. Diaz, Ellsworth’s treating physician, who recommended arthroscopic surgery.
Having found that Ellsworth’s knee was asymptomatic before the accident, the court determined that Ellsworth suffered a knee injury that caused chondromalacia, which is properly treated by arthroscopic surgery. The court granted general damages of $40,000 for injuries to Ellsworth’s knee. Further, the court awarded $1,000.00 for the shoulder injury, which it determined was of one-month’s duration; $400 for her split lip; and $400.00 for her eye injury. Past medical expenses in the amount of $3,329.00 and future medical expenses in the amount of $17,000.00, the cost of the proposed surgery, were also granted.
On appeal, Allstate urges that the court erred in awarding $40,000 for pain and suffering for the left knee, and for past and future medical expenses, when the court determined that Ellsworth lacked credibility, and “the testimony of two physicians indicated that whether or not she had knee pain depended on her credibility.” Allstate further avers that Ells-worth’s history of pain was subjective.
The court believed the statements made by Ellsworth at the emergency room (that she injured her knee in the accident) were the most credible, noting that both Dr. Diaz and Dr. Habig also based their opinions on that history, as well as on the objective MRI findings of chondromalacia. The court found Ellsworth was asymptomatic before the accident, finding that “... the objective evidence is hit knee plus immediate onset of pain ...” Arthroscopic surgery was found to be a reasonable recommendation. Thus it appears that the court based its findings on objective, rather than subjective, evidence.
[7It is well settled that the fact-finder’s reasonable evaluations of the credibility of witnesses will not be disturbed on appeal absent a finding that they are manifestly erroneous.[1] In the present case, the finding by the trial court that Ellsworth’s statements at the emergency room were credible is not manifestly erroneous. Further, we see no error in the court’s conclusion that the accident was the cause of the problem necessitating future surgery on Ellsworth’s knee. Allstate presented no evidence of another likely cause for the fact that Ellsworth’s left knee, which she claimed from the outset was injured in the accident, was somewhat worse than her right knee. Although she was a runner, there was no showing that Ellsworth experienced any problems with her knee prior to the accident.
The standard for the review of damage awards is whether, after an articulated analysis of the facts, the appellate court finds that the trial judge abused his great discretion. This determination is made with consideration to the individual circumstances of the injured plaintiff. After an analysis of the facts and circumstances peculiar to the particular case and the particular plaintiff, an appellate court may conclude that the award is inadequate (or excessive). *1179 Only then does the appellate court resort to prior awards, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion.[2]
In this case, Ellsworth testified that she would have the arthroscopy. Further, Dr. Diaz, whose opinion was given the greatest weight by the trial court, stated that Ells-worth’s knee condition had basically not improved since the time of the accident. Although her credibility in certain areas is surely questionable, it is clear that Ells-worth did suffer injuries as a result of the accident, and the entirety of her testimony cannot be discounted wholesale. We are presented with no contradictions to her statements that although she used to run triathlons, she is no longer able to run without pain, and that she is less physically active. Whereas she used to participate in more vigorous training, she now engages in therapeutic type | ¡¡exercises. Considering all the facts and circumstances peculiar to this plaintiff, we find that the award of $40,000.00 although rather high, is not so high as to constitute an abuse of discretion. Under these circumstances, the trial court also properly awarded Ellsworth damages for past and future medical expenses.
For the foregoing reasons, the judgment is affirmed. Costs are taxed to Allstate.
AFFIRMED.

. Vinet v. Estate of Calix, 03-572 (La.App. 5 Cir. 10/28/03), 860 So.2d 160, citing Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).

. Farrell v. Pierre, 02-1136 La.App. 5 Cir. 4/8/03, 846 So.2d 49, citations omitted.