510 So.2d 42 (1987)
Fred R. DEFRANCESCH
v.
A. Edward HARDIN, Individually and A. Edward Hardin, a Professional Law Corporation.
No. CA 86 0738.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
Writ Denied October 16, 1987.
*43 Devan Daggett, Baton Rouge, for plaintiff-appellee Fred R. Defrancesch.
Fred R. Defrancesch, Grayville, pro se.
Michael A. Patterson and Robert D. Hoover, Baton Rouge, for defendant-appellant A. Edward Hardin, etc.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
GROVER L. COVINGTON, Chief Judge.
This suit arose out of a dispute between two attorneys over the division of a contingency fee received as part of a settlement in a products liability suit. Both attorneys contracted jointly to represent the plaintiffs, but failed to agree as to the division of the attorneys' fee between themselves. The trial judge awarded fifty percent of the contingency fee, which was forty percent of the settlement, to plaintiff and defendant perfected this suspensive appeal.
After a thorough review and evaluation of the record, we agree with the findings of the trial judge as set forth in his well-written reasons for judgment[1], which are attached hereto as appendix A, and adopt same in their entirety.
AFFIRMED.

APPENDIX A

NO. 267,248 DIV. "I".

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

REASONS FOR JUDGMENT
Plaintiff Fred R. DeFrancesch, an attorney, instituted this action to recover his portion of an attorney fee obtained as a result of a contingency fee contract by which the plaintiff and A. Edward Hardin, defendant, were retained as counsel by Mr. and Mrs. Willie Vick, III, to prosecute a products liability claim on behalf of their minor son, Stephen. Defendant has reconvened seeking a declaration of the respective rights and interests of the two attorneys in the fee.

FACTS
In the fall of 1978, the plaintiff was employed as a full-time professor in the Law Enforcement program at Louisiana State University. One of his students and acquaintances was Mr. Willie Vick, III. In October of 1978, Mr. Vick's minor stepson, Stephen, received serious facial injuries when his shotgun accidentally discharged.
Shortly after the accident, Mr. Vick discussed the matter with the plaintiff who alerted Mr. Vick to the possibility of a lawsuit against the gun manufacturer. The plaintiff requested that Mr. Vick bring the gun to a fellow classmate, Stan Hughes, who had a measure of expertise in firearms and worked for the State Police. Upon examining the gun, Trooper Hughes formed the opinion that the trigger mechanism was defective.
Since the plaintiff was at the time a full-time professor and conducted only a small private practice from his home, he felt that he lacked the time, office facilities, and secretarial resources to handle the Vick case alone. Approximately one month after the accident, he contacted the defendant about the possibility of the two of them working together on the case. The plaintiff had already discussed bringing in another attorney with the Vicks who gave their approval and agreed to a 40% contingency fee arrangement.
At this time the defendant had been out of law school for a little over a year. Hardin and DeFrancesch had known each other for years, having been in college together and having worked for the Legislative Bureau together. The defendant agreed to meet with the plaintiff and the Vicks. In preparation, he drafted a "Contingent Fee Retainer" contract (P-1). The contract provides that the clients retain both attorneys *44 and that the attorneys' fee shall be 40% of any amount recovered. No provision is made for division of the fee between the two attorneys; nor was any side agreement drafted on this point between the plaintiff and the defendant.
The Vicks met with DeFrancesch and Hardin in November of 1978, at which time the contract was signed by all parties. It was also at this meeting that the defendant realized that Mr. Vick needed to adopt his injured stepson.
It is unnecessary for our purposes in the instant case to outline all the steps taken by Mr. Hardin in the prosecution of the Vicks' claim. It is undisputed that he prepared and filed the pleadings, conducted discovery, and kept the file. He also represented Mr. Vick in procuring Stephen's adoption and it is noted with concern that plaintiff was appointed to represent the absentee father in these adoption proceedings.
At some point after the initial meeting with the Vicks, both attorneys met with a gun dealer.
In April of 1982, shortly before the case was to be tried, Mr. Hardin received a favorable structured settlement offer, as follows: $200,000.00 cash; five payments of $45,000.00 payable every five years; then five payments of $25,000.00 payable every five years; plus $2,000.00 per month for the life of Stephen Vick, with a thirty year guarantee. The plaintiff was informed of the offer and discussed it with both Mr. Hardin and Mr. Vick. It was plaintiff's understanding that he was to be present at the final settling of accounts. However, defendant testified that he unsuccessfully tried to contact DeFrancesch about the formal settlement.
On June 2, 1982, DeFrancesch met with Hardin to settle on the fee. The trust that had been established on behalf of Stephen Vick with the settlement funds guarantees that 40% of the funds received for the boy is the property of A. Edward Hardin. At this meeting, defendant offered plaintiff one-third of the 40% fee from the initial $200,000.00 and one-third of the remaining structured settlement. Plaintiff refused the offer because he understood their agreement to be that each would receive 50% of the fee. In May of 1983, plaintiff filed the instant suit.

FACTUAL ISSUES
There are three intertwined areas of factual dispute in this matter. The first point of contention concerns the fee sharing arrangement envisioned by each attorney from the inception of their joint representation. It was Mr. DeFrancesch's understanding that the fee would be divided equally. Although he was unable to recall at trial if such an arrangement was ever discussed with Hardin, he felt certain that it had been. On the other hand, the defendant testified that he was under the impression that DeFrancesch was to receive one-third of the fee for "client management" and he was to receive two-thirds for handling the legal work.
This leads to the second area of dispute: the role that the plaintiff was to play in prosecution of the case. Mr. Hardin testified that he thought the plaintiff was to "take care of" the Vicks and help them with Stephen's psychological, physical and scholastic problems brought about by the accident. Both Mr. Hardin and Mr. Vick testified as to their dissatisfaction with DeFrancesch's performance in this regard. Also, Mr. Vick testified that when a problem occurred, it was Mr. Hardin who was called to help. There was no testimony that the plaintiff ever refused to give assistance when requested or that the Vicks called upon him as they did Mr. Hardin. Furthermore, it was not the plaintiff's understanding that he had adopted a "client management" role. He saw his position as one of an advisory, consulting and research nature. As he stated throughout the trial, his faculty position made it impossible for him to handle all aspects of the case and that is why he brought another attorney in in the first place.
The final point of contention concerns the amount and quality of the work done by the plaintiff in representing the Vicks. The defendant would have the court believe that DeFrancesch was no more than a referral attorney, one who "discovered" a *45 case and sent the client to another attorney. The plaintiff represents that he did the initial discovery as to defects in the gun, that he did the initial legal research to determine whether the Vicks did, in fact, have a compensable claim, and that he continued to research, advise, and consult on the case until settlement.

LEGAL ISSUES
Simply stated, the legal issue the Court faces concerns the proper apportionment of an attorneys' fee obtained as a result of a contingency fee contract which both attorneys entered into with the client and where neither attorney was discharged.
The contention of the plaintiff is that by entering into the contract, the two attorneys embarked upon a "joint venture" for the representation of the Vicks. As joint adventurers, they are to share equally in the fee. Defendant contends that the "quantum meruit" approach of the Code of Professional Responsibility, D.R. 2-106 and D.R. 2-107 should govern the distribution of the fee.

APPLICABLE LAW
For background on the law applicable to this case, the court turns to the landmark case of Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978). In Saucier, a client discharged, during pendency of his claim, an attorney he had previously retained under a contingency fee contract. The client then retained another attorney on contingency. Without further elaborating, it is sufficient to note that the Louisiana Supreme Court ultimately held that only one fee was due by the client and that fee was to be divided between the two attorneys on a "quantum meruit" basis, using the "reasonable fee" factors provided in D.R. 2-106.
With Saucier in mind, it has been held that that case and its "quantum meruit" approach does not apply in a situation where two lawyers or firms execute a single contingency fee contract, neither is discharged, and both are involved in the case through settlement. In such a situation, the single contingency fee is to be divided equally between the two lawyers or firms. Fontenot and Mitchell v. Rozas, Manuel, Fontenot, and McGee, 425 So.2d 259 (3rd Cir.1983).
Another case which is cited in Fontenot and pertinent to the case at hand is McCann v. Todd, 203 La. 631, 14 So.2d 469 (La.1943). That case holds that when attorneys jointly undertake to represent a client without contracting for a specific division of fees, they share equally in the fee, and it is immaterial that one attorney may provide more labor or skill than the other. McCann further provides that this holding applies when one attorney engages another to assist in the representation of a client under a contingency fee contract. The joint undertaking of legal representation is deemed a "joint venture".

CONCLUSION
It is the opinion of this Court that the instant dispute presents the situation envisioned in the Fontenot and McCann cases. We have two attorneys contractually embarking on a joint representation with and for their client.
The parties were in relatively the same position to bargain throughout the representation, that is, both are professionally trained in contracts, agreements, communication, and the articulation of intent. In spite of ample time and opportunity to alter, modify, explain or supplement the original contract as to their fee arrangement, they felt no urgency or inclination to do so.
Both attorneys were retained through the settlement of the suit. Both attorneys remained responsible to their client throughout the suit.
The Court is further satisfied that work at inception and during the early months was performed by both attorneys, but later the quantity and quality of work weighs heavily in favor of Mr. Hardin. Notwithstanding, no support is found for Mr. Hardin's "impression" of dividing the fee on a one-third to two-thirds basis in spite of the opportunities for it to be manifested. It cannot be found as a fact that Mr. DeFrancesch actively withheld his services to the case. It is more appropriate to find that Mr. Hardin's energy, ability and enthusiasm for the case dominated.
*46 However, the Court will abstain for policy reasons, from delving into the questions of who did what work and whether or not certain services by one lawyer outweighed those done by the other. We are faced with a contract by two professionals to represent a client. By definition, a "professional" is one who has been trained to exercise independent judgment in his work and to establish his or her own methods, while, of course, keeping the client's best interests in mind. Certainly it is the duty of the Courts to determine whether the Code of Professional Responsibility has been complied with. However, the Courts cannot, and must not, assume the role of telling attorneys that they must work "X" amount of hours, take "X" amount of depositions, read "X" amount of cases, etc. before they are entitled to a certain fee.
Policy reasons dictate a quantum meruit approach to fee determination in a Saucier situation, where a number of attorneys independently enter single representation of a sole client. In that type case, the Court must analyze the work done by each attorney in order to equitably divide the fee. An important concern in the Saucier case was preventing a client from owing more than one fee. That concern is not present in the case at hand. The client agreed to a 40% contingency fee to be paid to both attorneys jointly.
In light of the foregoing, the Court holds that Plaintiff, Fred R. DeFrancesch, is entitled to share equally in any attorneys' fees generated as result of this lawsuit.
Costs are to be equally cast.
Judgment will be signed accordingly.
Clinton, Louisiana, this 3 day of January, 1986

JUDGMENT
This matter came on pursuant to regular assignment. After hearing the evidence and argument of counsel, and for written reasons assigned,
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Fred R. DeFrancesch and against A. Edward Hardin, individually, and A. Edward Hardin, A Professional Law Corporation, awarding to Fred R. DeFrancesch an equal share in any attorney's fees that have been generated or will be generated from the lawsuit entitled "WILLIE VICK, III, ET AL V. HARRINGTON AND RICHARDSON, INC.", Number CA 79-545-A, United States District Court for the Middle District of Louisiana.
All costs are to be born equally by each party. Legal interest shall run from the date of judicial demand.
JUDGMENT RENDERED AND SIGNED in Clinton, Louisiana this 16th day of April, 1986.
 /s/ William F. Kline, Jr.
 William F. Kline, Jr.,
 Judge ad hoc
 19th Judicial District Court
 Parish of East Baton Rouge
NOTES
[1] The full citation for McCann v. Todd, cited in the reasons for judgment, is 203 La. 631, 14 So.2d 469 (1943).