726 So.2d 1018 (1999)
Reginald BROWN
v.
Bill SEIMERS, et al.,
J.T. Hill, Intervenor.
No. 98-CA-694
Court of Appeal of Louisiana, Fifth Circuit.
January 13, 1999.
*1019 C. John Caskey, Baton Rouge, Fontella F. Ryan, Sibley Law Firm, Greensburg, Louisiana, Attorneys For Appellant J.T. Hill.
Sheila C. Myers, New Orleans, Louisiana, Attorney For Appellee Vernon P. Thomas.
Panel composed of Judges H. CHARLES GAUDIN, SOL GOTHARD and JAMES L. CANNELLA.
CANNELLA, Judge.
Intervener, J.T. Hill (Hill), appeals from a judgment awarding him 15% of a class action fee for legal services and awarding Vernon P. Thomas (Thomas) 85% of the escrowed fee. We affirm.
On October 5, 1988, the Louis Dreyfus Grain Elevator in Reserve, Louisiana exploded. The following day, Hill filed a lawsuit on behalf of certain claimants for damages. He did not serve defendants. Subsequently, Hill signed up various people in the area as individual claimants.
In 1989, Hill met Thomas in traffic court where both were representing other clients. At that time, various complaints were pending against Hill before the Louisiana State Bar Association Disciplinary Board (Bar Association). Thomas, who considered himself a specialist in the area, sought to defend Hill before the Bar Association in the disciplinary proceedings. At that time, Hill was involved in both the Louis Dreyfus Grain Elevator (Dreyfus) case and another class action involving Shell Oil Company (Shell) in Reserve. Subsequently, Hill was prohibited from representing clients in the Shell case, for reasons unrelated to the Bar Association proceedings. As a result, Hill requested Thomas to take over the Shell case. When it became clear that Hill would probably lose his license to practice law, he also brought Thomas into the Dreyfus case.
Boxes containing Hill's files, rosters and pleadings were delivered to Thomas' office in 1991, prior to the revocation of Hill's license to practice law. Thomas then associated attorney, Judith DeFraites (DeFraites), as coclass counsel in the Dreyfus matter. Hill had conducted no discovery and only filed the original petition, although he had spoken to and attempted to sign potential class members. Thomas' case manager organized the information given to Thomas by Hill and placed it in a computerized data base. Meetings were held with the potential class members and new contingency fee contracts were executed by both the existing members of the class and the new members that were added to the class as the case proceeded. Thomas filed an amended and supplemental petition asking for class certification in December of 1992. He also served the petition on defendants. In November of 1992, Hill voluntarily surrendered his license to practice law.
The class certification was subsequently contested, granted and appealed. The boundary was then amended by the trial judge. Hill was not involved in those proceedings. In addition, the class action trial judge rejected the claim forms. As a result, all of the claimants were re-interviewed and re-signed and new members were added. This was done beginning in January of 1996. Some of Hill's original class members did not re-sign.
Eventually, the Dreyfus case was submitted to mediation, which resulted in a settlement to the class members. Thomas then prepared and processed numerous tutorship and succession proceedings for the class *1020 members, who needed those judgments in order to receive their settlement proceeds. When he discovered that the case had settled, Hill intervened on July 17, 1996 in the lawsuit for his share of attorney's fees.
The order approving the settlement was entered on October 10, 1996. In the judgment, the class action trial judge awarded DeFraites and Thomas each $185,000 for their work as class counsel. Thomas was further awarded $222,600 in contingency contract fees for his client work that is not considered part of the duties of the class counsel. Thomas' total was $408,100. In addition, Hill agreed to release DeFraites and the class members from the intervention and to accept any award from Thomas' share of the fees. In January of 1997, one-half of the fees were paid to Thomas and the remaining half was placed in the case administrator's escrow account pending disposition of the attorney's fees dispute.
The trial of the intervention was held on May 23 and 27, 1997. Afterwards, the trial judge rendered judgment in favor of Hill for 15% of the contingency contract fees. He found that Hill was not entitled to any of the class counsel fees because he performed no work as class counsel. The trial judge determined that Hill did not assist in the class certification process and did no work on the case from the date the case was certified until resolution. He concluded that Hill was entitled to a percentage of the fee, on a quantum meruit basis
On appeal, Hill contends that the trial judge erred in failing to consider the prohibited transaction of an attorney with a client as substantive law, failing to enforce a trial subpoena for documents known to exist and/or applying an adverse evidentiary presumption in default of production, and failing to apply the clearly establish substantive law concerning fee splits among attorneys where no contract can be proved.
Hill first argues that Thomas violated the Rules of Professional Conduct of the Louisiana State Bar Association by entering into a prohibited transaction with a client. He contends that Thomas represented him in the Bar Association disciplinary proceedings and under Rule 1.8 should not have profited from his acts in "hustling" the class action case from Hill, his client. As a result, Hill contends that Thomas should forfeit all of the class action fees.[1]
This complaint is directed at Thomas' allegedly unethical behavior that should be raised with the Bar Association. We will not address this issue in the context of an attorney's fee dispute.
Hill second argues that under either the theory of spoilation of evidence or the adverse presumption against a party who fails to produce evidence known to exist, the trial judge should have found that a written fee splitting contract existed. Hill contends that when he associated Thomas on the case, he and Thomas executed a written contract dividing any attorney's fees awarded in the Dreyfus case, 80% to Hill and 20% to Thomas. Hill stated that he could not produce the contract because his copy was lost when he was evicted from his office following the loss of his license. Hill argues that Thomas has *1021 the original, but has failed to produce it, despite a subpoena for the document.
On appellate review, the court's function is to determine whether the trial judge's findings were clearly wrong or manifestly erroneous. Johnson v. State Farm Mut. Auto. Ins. Co., 95-1027 (La.App. 5th Cir. 5/15/96); 675 So.2d 1161, 1163. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether his conclusion was a reasonable one. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Johnson v. State Farm Mut. Auto. Ins. Co., 675 So.2d at 1163; Stobart v. State, Through DOTD, 617 So.2d at 882. However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error, even in a finding purportedly based upon a credibility determination. Rosell v. ESCO, 549 So.2d at 844-45.
The trial judge found that no formal agreement existed in this case. He stated that all the testimony on this point was contradicted by Thomas and there was no testimony showing that a meeting of the minds took place. Hill's former secretary, Quan Marie Wagner testified on this issue. She claimed to have seen the written contract with the fee split percentages handwritten on the bottom. However, the trial judge found that her testimony was inconsistent with Hill's version of the facts. After reviewing the record, we find no manifest error in this finding.
Alternatively, Hill asserts that where a fee sharing agreement cannot be proved to a contractual certainty, the agreement is legally deemed to have been on a fifty-fifty basis.
The trial judge relied on a Louisiana State Bar Association Ethics Advisory Committee Opinion No. 95-062 to find that Hill is entitled to share in the Dreyfus case attorney's fees.[2] In that opinion, the committee considered the situation of an attorney who was disbarred prior to settlement of a case. After setting out several prerequisites, the committee concluded that the attorney is entitled to share in the fee in proportion to the reasonable value of the services performed prior to the date of disbarment. There is no jurisprudence directly on this point. However, Rule 1.5 of the Rules of Professional Conduct provides in part:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent...

*1022 (e) A division of fee between lawyers who are not in the same firm may be made only if:
(1) The division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;
(2) The client is advised of and does not object to the participation of all the lawyers involved; and
(3) The total fee is reasonable ...
State Bar Association Articles of Incorporation, Art. 16, Rules of Prof.Conduct, Rule 1.5, La.R.S. following 37:221(b).
Hill asserts that we should apportion the fees equally because this was a joint venture, citing Defrancesch v. Hardin, 510 So.2d 42 (La.App. 1st Cir.1987) and McCann v. Todd, 203 La. 631, 14 So.2d 469 (La.1943).
In Defrancesch, plaintiff, an attorney who was a law enforcement professor, was initially contacted by the client in a products liability action. He associated the defendant-attorney to participate in the case because he lacked the time, office facilities and secretarial resources to handle the case alone. The attorneys executed a single fee contract with the client, but failed to execute a contract between themselves as to how the fee would be divided between them. During the suit, both attorneys remained on the case, both acted on and remained responsible to their client. The case eventually settled, after which the two attorneys disputed the division of the fees received from the client. Based on these facts, the court found that this arrangement was a joint venture and that, regardless of the time and labor each put into the case, an equal division of the fee was appropriate. The court cited McCann v. Todd, 203 La. 631, 14 So.2d 469 (La.1943), in which the Louisiana supreme court held that, "Attorneys who jointly undertake to prosecute or to defend a lawsuit are entitled, in the absence of any agreement to the contrary, to share equally in the compensation, and it is immaterial which attorney furnishes the most labor or skill...." McCann v. Todd, 203 La. 631, 14 So.2d 469, 472 (La. 1943); Defrancesch v. Hardin, 510 So.2d at 45. Furthermore, the McCann court applied the holding to a contingent fee contract, and deemed such an arrangement as a "joint venture." McCann v. Todd, 203 La. 631, 14 So.2d 469, 472 (La.1943); Defrancesch v. Hardin, 510 So.2d at 45. The McCann decision was also followed in Scurto v. Siegrist, 598 So.2d 507, 509-510 (La.App. 1st Cir.), writ denied, 600 So.2d 683 (La.1992).
In Defrancesch, the court stated:
We are faced with a contract by two professionals to represent a client. By definition, a "professional" is one who has been trained to exercise independent judgment in his work and to establish his or her own methods, while, of course, keeping the client's best interests in mind. Certainly it is the duty of the Courts to determine whether the Code of Professional Responsibility has been complied with. However, the Courts cannot, and must not, assume the role of telling attorneys that they must work "X" amount of hours, take "X" amount of depositions, read "X" amount of cases, etc. before they are entitled to a certain fee.
Policy reasons dictate a quantum meruit approach to fee determination in a Saucier [v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978)] situation, where a number of attorneys independently enter single representation of a sole client. In that type case, the Court must analyze the work done by each attorney in order to equitably divide the fee. An important concern in the Saucier case was preventing a client from owing more than one fee. That concern is not present in the case at hand. The client agreed to a 40% contingency fee to be paid to both attorneys jointly.

Defrancesch v. Hardin, 510 So.2d at 46.
Although the arrangement here may have been a "joint venture" under McCann and DeFrancesch when it commenced, Hill did not continue to represent the class, as did Defrancesch. Although Hill claims that he continued to work on the case prior to the revocation of his license, Thomas and his paralegal testified differently. After 1992 he was prohibited from working as a lawyer on the case. We conclude that McCann and DeFrancesch are distinguishable and inapplicable to these facts and that the trial judge *1023 did not err in refusing to apportion the fee on an equal basis.
The trial judge apportioned the fee based on quantum meruit. In reaching a reasonable fee, the judge considered the factors set forth in Johnson v. Insurance Co. of North America, 27,847 (La.App. 2nd Cir. 1/24/96), 666 So.2d 1286, 1289-1290. He considered the time and labor required in prosecuting the claim; the difficulty and novelty of the questions involved, the degree to which the case precluded other employment, the fees customarily charged in the locality for similar services, the amount of money involved the results obtained, the time constraints operative, and the experience, reputation and ability of the lawyer. Based on the facts in this case, we find that a quantum meruit was appropriate to determine Hill's portion of the fee. See: State Bar Association Articles of Incorporation, Art. 16, Rules of Prof.Conduct, Rule 1.5(a), La.R.S. following 37:221(b) and Bertucci v. McIntire, 96-933 (La.App. 5th Cir. 3/25/97), 693 So.2d 7.
We further find that, based on the evidence, the trial judge did not manifestly err in his award to Hill. As found by the trial judge, Thomas and DeFraites performed the "lion's" share of the litigation. Thomas amended the petition and had it served. He conducted all discovery and data processing functions. He negotiated with the defendants and successfully entered into mediation which resulted in a settlement. Hill on the other hand, performed the initial "rainmaking" and early case management, although he did not computerize the information, which the trial judge stated was essential in a class action. Hill filed the initial pleading, but did not participate in the re-signing of the class members. The loss of his license precluded him from all of the court work. Thus, the trial judge appropriately allocated 85% of the fees to Thomas and 15% of the fees to Hill.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of this appeal are to be paid by Hill.
AFFIRMED.
NOTES
[1] Rule 1.8 of the Rules of Professional Conduct provides:

Rule 1.8. Conflict of interest: Prohibited transactions
As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. Furthermore, a lawyer may not exploit his representation of a client or information relating to the representation to the client's disadvantage. Examples of violations include, but are not limited to, the following:
(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless;
(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) The client consents in writing thereto ...
See: State Bar Articles of Incorporation, Art. 16, Rules of Prof.Conduct, Rule 1.8, La.R.S. foll. 37:221(b).
[2] We note that he found that Hill was not entitled to fees arising from Thomas' status as "class counsel", so the percentage would be taken from the total amount attributed to contingency fees.