| JAMES L. CANNELLA, Judge.
In a child custody case, the Defendant, Albert Fay Morris, Jr., appeals from a contempt judgment which fined him $500 and awarded $1,500 in attorney’s fees to the Plaintiff, Dawn Morris. We affirm.
The Plaintiff filed a Petition for Divorce from the Defendant in June of 2001. Two children were born of the marriage, Alex, 4^ years old and Albert, aged 11. The subsequent proceedings have been acrimonious. Following the Plaintiffs latest rule for contempt against the Defendant, a hearing was held in February of 2004. The trial judge found him in contempt on February 25, 2004, based on the Plaintiffs allegations that the Defendant violated orders relating to custody and visitation, and that he specifically violated the restraining order.
On November 5, 2001, the Domestic Commissioner issued an interim order awarding, among other things, child and spousal support and joint custody, with the Plaintiff designated as the primary domiciliary parent. The Defendant was given visitation every other weekend. The Defendant was ordered to pick up 13the children on Friday from school no earlier than 3:00 p.m. and return the children to school no later than 8:15 a.m. on the Monday following the weekend visitation. In addition, the Defendant was awarded visitation every Wednesday from 3:00 p.m. to Thursday at 8:15 a.m. He was to pick up and return the children to and from the school. The visitation time was extended to 1:00 p.m. on any Monday and Thursday that the school was not in session. Except for Thanksgiving and Christmas, no exception is provided for the Defendant to pick up the children or return them to any place *1050 other than the school for any reason, including days that the school is not in session.
Special provisions were made for Thanksgiving and Christmas in the November of 2001 interim order. The Defendant had custody from 3:00 p.m. on Thanksgiving eve until returning them to the Plaintiff no later than 3:00 p.m. Thanksgiving Day. During the Christmas holidays, the children were to be picked up by the Defendant at 2:00 p.m. on Christmas Day and returned to the mother no later than 6:00 p.m. on December 26.
Following the initial order, various pleadings were filed, including rules for contempt for the Defendant’s failure to pay support. He was found in contempt of court in January of 2002 and in May of 2002 for failing to pay support.
On July 22, 2002, the trial judge issued a restraining order prohibiting the parties from approaching each other closer than 100 yards, from having any sexual partner in the house while the children are there, and ordering a second custody evaluation by the court appointed psychologist. In August of 2002, the divorce was granted.
In November of 2002, the Plaintiff filed another contempt rule against the Defendant for violating the provisions in the interim order as to where and when |4the children were to be picked up and returned, in addition to support and arrear-ages issues. On December 11, 2002, the trial judge issued a judgment modifying the Thanksgiving and Christmas holiday visitation for the year 2002-2003. The Defendant was also ordered to pay arrearag-es on penalty of jail time. For Christmas of 2002, the Defendant was to pick up the children on'Friday, December 20, 2002 and to return them by 3:00 p.m. on Christmas Day to the Plaintiffs home. He was also allowed custody during the week following New Year’s Day. The order further stated that the Defendant’s contempt would result in a straight 90-day jail sentence.
Another rule for contempt for failing to pay support was filed by the Plaintiff in January of 2003.[1] In November of 2003, two hearings were held. On November 6, 2003, the trial judge heard the two contempt rules filed by the Plaintiff against the Defendant in November of 2002 and January of 2003. In a second hearing on November 7, 2003, the attorneys read into the record a stipulation regarding support and an agreement modifying custody and visitation. Under the consent agreement regarding custody and visitation, the Plaintiff has custody of the children on Mondays and Tuesdays and the Defendant on Wednesdays and Thursdays. The parties have custody on alternate week-ends, including the summer. Counsel for the parties stated in the hearing that the schedules for the Thanksgiving and Christmas holidays were to be negotiated after the hearing. The consent agreement was not reduced to writing. The parties never confected a revised schedule for the Thanksgiving and Christmas holidays.
On January 9, 2004, the Plaintiff filed a rule for contempt, alleging that the Defendant violated the visitation arrangement, citing numerous acts by the | ¡^Defendant. The hearing was held on February 12, 2004. Following the hearing, the trial judge found the Defendant in contempt of court, fined him $500 and awarded the Plaintiff $1,500 for attorney’s fees.
On appeal, the Defendant contends that the trial judge erred in considering the interim order of October 29, 2001[2] because *1051 it was superseded by the order of November 7, 2003. Second, the Defendant asserts that the trial judge erred in finding him in contempt of court, since many of the Plaintiffs allegations were never ordered by the court, and the Plaintiff failed to prove that the Defendant willfully disobeyed any court order. Third, the Defendant contends that the trial judge erred in awarding attorney’s fees because there was no contempt of court proven and no evidence was submitted to support the award.
In her rule for contempt, the Plaintiff alleged that the Defendant failed to return the children to school on November 22, 2003, telling her that she had to pick them up from his home, in violation of the interim order of November 7, 2001. She asserted that he also returned the children late on Christmas Day, in violation of the order. In addition, the Plaintiff contended that the Defendant violated school rules by failing to clothe the youngest child, Alex, in his school uniform and by failing to send him to school with his Indian costume for the Thanksgiving celebration. She asserted that on November 22, 2003, the Defendant failed to give her the report card for the oldest child, Albert (11 years old), or return the child’s uniform when she was forced to pick up the child from the Defendant’s home. She contends that he told her that he would return the items on Thursday, but failed to do so. In addition, the report card was not sent back to the school, putting Albert in jeopardy of suspension. The Plaintiff alleges that on December 1, 2003, Alex was sent to school with a school jacket | fibecause of the cold weather, but was returned to her in short sleeves, without the jacket. She asserts that the Defendant has kept both of the children’s’ school jackets and uniforms and that he refuses to return the clothing. The Plaintiff also complained that the Defendant returned some underwear and pants back to her either cut up, or with the words “bleach” in dark letters written across a bleach stain on the pants, making the clothing unusable.
At trial, the Defendant explained his conduct in failing to return the children to school when his visitation was over. He stated that he was informed that the school does not have after school care for 11 year-old children, but only for the young children. Yet, he had apparently complied with the order until that date. In addition, the Plaintiff disputed that statement, naming several children Albert’s age that stay after school waiting for their parents. Furthermore, she testified that he forced her to pick up the children from his home on December 22, 2003, even though after school care was available. That day, when she arrived to pick up the children, they were not at school and she had to make multiple phone calls trying to locate them. In regard to bringing the children back to the Plaintiff late on Christmas Day, he stated that he was late because they could not find the Plaintiff. He contends that both he and Albert tried calling, without success. He also asserts that they went to the Plaintiffs house and knocked, but got no response. The Plaintiff testified that she was home all day, entertaining and cooking for 10-11 people. She denied that the Defendant telephoned or knocked on the door. The Plaintiff said that she tried to reach the Defendant by phone when the children were not brought home on time, but received no answer.
The Defendant denied that he violated school policy by sending Alex to school in regular clothes. He contended that the 3-4 year olds do not have to |7wear uniforms. The Plaintiff responded that it is not a written policy and, although not in place at the beginning of the school year, all of the parents and teachers knew that a policy was implemented during the fall requiring *1052 the 3-4 year old children to wear a certain color pants and shirts.
In regard to the Thanksgiving costume, the Defendant contended that he spoke to one of the teachers the night before and was told to dress the child in brown pants. Furthermore, the children had told him that the Plaintiff had a costume for the child. When they got to school the next day, the Plaintiff arrived with the child’s costume. The Plaintiff testified that she had made a costume and had taken it to school for the celebration because she knew that the Defendant would not provide one for Alex, and the children were required to wear one. She noted that all of the parents received several instructions regarding the costumes and that the teacher spoke specifically to the Defendant about it.
The testimony indicated that the Defendant specifically requested the school to send him the children’s report cards. However, when the Plaintiff requested one of Albert’s report cards, the Defendant said that he did not have it but would look for it. He had also said that he would return a uniform, but never did. The report card was never found and the school called the Plaintiff when it was not signed and returned. The Plaintiff noted that this was cause for suspension at the school, although no action was taken. The Defendant testified that he searched, but was unable to find the report card.
The Defendant explained the incidents with the cut up clothing and the pants that he admitting marking with a black marker. He contended that the Plaintiff sends the children to school in clothing that is in poor condition, or too small and that it embarrasses his older son. He testified that he has replaced many articles of clothing. He marked those particular pieces so that the Plaintiff [scould not use them again. The Plaintiff asserted that the clothes were not in poor condition, although the pants had some small bleach stains. She testified that they were still wearable and that she would have been able to dye the pants. The Plaintiff noted that the day she got the ruined underwear and pants, the Defendant sent the children home in shorts and sandals, although it was a cold day in December. The Plaintiff further stated that she believed that the Defendant cut up Alex’s underwear because, according to Albert, the Defendant was angry and offended that Alex was still wearing Teletubbies underwear.
In regard to Alex’s jackets, the Defendant testified that he leaves one in Alex’s locker at school and one in the Defendant’s car. The Plaintiff testified that she has had to buy three jackets for Alex because of the Defendant’s refusal to send the child home with his jacket and she cannot send the child to school without one on cold days.
The Plaintiff also testified that the night before the trial, the Defendant went to her home while she was there and rummaged in her garbage. She testified that a policeman was outside with the Defendant. When she showed the officer her restraining order, the officer told the Defendant to leave. The Defendant did not deny that he was there. He said that he went to the house because someone told him that the Plaintiff was throwing away items belonging to him. He denied that the police officer told him to leave.
Contempt proceedings are governed by La.C.C.P. arts. 221-227 and La. R.S.13:4611. C.C.P. art. 224 provides that a constructive contempt is “any contempt other than a direct one.” A constructive contempt includes the “Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court [.]” C.C.P. art. 224(2).
[9“A person may not be adjudged guilty of a contempt of court except for miscon *1053 duct defined as such, or made punishable as such, expressly by law. The punishment which a court may impose upon a person adjudged guilty of contempt of court is provided in R.S. 13:4611.” C.C.P. art. 227. Under La.R.S. 13:4611(l)(d), the courts may punish a person adjudged guilty of a contempt of court for disobeying “an order for the payment of child support or spousal support or an order for the right of custody or visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.”[3]
In Brunet v. Magnolia Quarterboats, Inc., 97-187 (La.App. 5th Cir.3/11/98), 711 So.2d 308, 313, writ denied, 98-0990 (La.5/29/98), 720 So.2d 343, cert. denied, 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999), this court stated:
To find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of court intentionally, knowingly and purposefully, without justifiable excuse. In making this determination, the trial court is vested with great discretion. City of Kenner v. Jan P. Jumonville, Placide Jumonville, p. 5-6, 97-125 (La.App. 5th Cir.8/27/97), 701 So.2d 223; Reeves v. Thompson, 95-0321 (La.App. 4th Cir.12/11/96), 685 So.2d 575, 579. Proceedings for contempt must be strictly construed, and the law does not favor extending their scope. Estate of Graham v. Levy, 93-0636, 93-0134 (La.App. 1st Cir.4/8/94), 636 So.2d 287, 290, writ denied, 94-1202 (La.7/1/94), 639 So.2d 1167.
As a general rule, the power of a court to punish for contempt is limited to the imposition of incarceration and fines to be paid to the court. Sporl v. Sporl, 03-0364, p. 5 (La.App. 5th Cir.10/28/03) 860 So.2d 258, 261. However, the court can award attorney fees in actions relating to child support matters under the authority of La. R.S. 9:375. Sporl v. Sporl, 03-0364 at 6, 860 So.2d at 261.
[inThe Violations
According to the Plaintiff, the Defendant specifically violated the initial visitation order by refusing to return the children to their school on certain dates. The Defendant argues that that interim order containing the restriction was superseded by the November 7, 2002 consent agreement. Our review discloses that the consent agreement only changed the days that the parties have custody. It did not specifically address the place and times that the children were to be picked up and returned by either party. Thus, those provisions were not superseded by the November 7, 2002 order and the failure to abide by the provisions subjects the parties to a finding of contempt.
In regard to the Defendant’s delay in returning the children to the Plaintiff on Christmas Day of 2003, our review of the record indicates that the parties are confused about custody and visitation on Christmas. According to the record, the interim order issued November 5, 2001 is the only order that relates generally to Christmas holidays. The December 12, 2002 modification to the interim order was specific to Christmas of 2002 and New *1054 Year’s of 2003. Thus, the interim order was in effect during the Christmas holidays of 2003 and remains in effect. Since the initial order gave custody to the Defendant until December 26th, the Defendant was not late in returning the children on Christmas Day of 2003.
The Plaintiff testified to various other incidents involving the children’s clothing that have caused her distress. The Plaintiff testified that the children had always attended the same school and the Defendant was aware of school rules regarding the uniform and the Thanksgiving celebration costume requirements. She denied sending the children to school in clothes too small and contended that he sent them home in ill fitting clothing. The Defendant defended his actions, in summary, by asserting that his decisions relative to the clothing issues were in accord with the school policy, were based on information from a teacher, or were Indue to his disapproval with the condition of the children’s clothing and. the manner in which the Plaintiff dressed them. He accused the Plaintiff of sending the older boy to school in pants that were too small or unhemmed, which caused embarrassment to the child. Furthermore, he contends that he cannot be held in contempt for those acts because none of the domestic orders refer to the children’s clothing or other details of daily care.
We agree that the orders do not specifically address clothing issues. However, the restraining order prohibits the parties from harassing each other and the Defendant’s explanation for his actions in withholding or destroying the children’s clothing purchased by the Plaintiff indicates a pattern of unreasonable behavior constituting harassment of the Plaintiff. The Defendant can be held in contempt of court for violating the restraining order’s prohibition against harassment.
In addition to the allegations in the Plaintiffs rule for contempt, she testified that on the night before this hearing, the Defendant went to the Plaintiffs home while she was there, in violation of the restraining order restricting.the parties to a “football field” distance from each other. Although the Defendant tried to justify his conduct, his reasons are not sufficiently compelling to warrant his blatant disregard of the restraining order.
Willful Disobedience
The Defendant contends that the Plaintiff failed to prove that any of his actions constituted willful disobedience of any domestic order. . The trial judge did not provide reasons for judgment.
On appellate review, the court’s function is to determine whether the findings of the trier of fact were clearly wrong or manifestly erroneous. Brown v. Seimers, 98-694, p. 6 (La.App. 5th Cir.1/13/99), 726 So.2d 1018, 1021, writ denied; 99-0430 (La.4/1/99), 742 So.2d 556; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations , and inferences are as reasonable. Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Rosell, 549 So.2d at 844. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether its conclusion was a reasonable one. Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Stobart, 617 So.2d at 882. Only where the documents or objective evidence so contra- *1055 diet a witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness’s story, may the court of appeal find manifest error, even in a finding purportedly based upon a credibility determination. Brown, 98-694 at p. 7, 726 So.2d 1018 at 1021; Rosell, 549 So.2d at 844-45.
The evidence shows that the Defendant clearly violated the restraining order the night before the trial, by going to the Plaintiffs house and not maintaining a 100 yard distance from her. He also engaged in a pattern of conduct guaranteed to cause the Plaintiff distress by failing to abide by the order to return the children to school after his visitation time ended and by his actions relating to the clothing. The judge made a credibility determination in rejecting the Defendant’s explanations and excuses for his behavior. After our review, we find no manifest error in this regard. The evidence supports a finding that the Defendant “intentionally, knowingly and purposefully, without justifiable excuse” failed to abide by the provisions of the visitation and restraining orders. See: Brunet, 97-187 at 10, 711 So.2d at 313.
113Attorney’s Fees
The Defendant contends that there is no statutory authority to award attorney’s fees in a contempt case or that the award was improper because he was not in contempt of court. He further argues that the Plaintiff failed to produce evidence to support the award.
We have determined that the Defendant was in contempt of court. In addition, the court can award attorney fees in actions relating to child support matters under the authority of La. R.S. 9:375. Sporl, 03-0364 at p. 6, 860 So.2d at 261. Furthermore, we find that the award is reasonable in light of the record and evidence of the Defendant’s recalcitrance in obeying the orders of the court on numerous occasions.
ANSWER TO APPEAL
The Plaintiff answered the appeal, requesting this Court to award additional attorney’s fees for the work necessitated by the Defendant’s appeal, for damages against the Defendant for frivolous appeal, and for costs of trial and of the appeal to be assessed against the Defendant. After our review of the issues, we decline to find that the appeal was frivolously filed and deny the request for damages for frivolous appeal. We will award the Plaintiff additional attorney’s fees for the appeal in the amount of $1,000. In addition, we affirm the trial judge’s award of trial court costs in favor of the Plaintiff, and further assess the costs of this appeal against the Defendant.
Accordingly, the judgment of the trial court is hereby affirmed. The Defendant is ordered to pay $1,000 to the Plaintiff in additional attorney’s fees, together with all costs of this appeal.
AFFIRMED.

. From then until November, various pleadings unrelated to the issues here were filed.

. The October 29, 2001 "order” was in open court. The enforceable judgment was rendered on November 5, 2001.

. Under R.S. 13:4611(l)(e), when a parent has violated a visitation order, in lieu or in addition to the fine, the court may order any or all of the following:
(i) Require one or both parents to allow additional visitation days to replace those denied the noncustodial parent.
(ii) Require one or both parents to attend a parent education course.
(iii) Require one or both parents to attend counseling or mediation.