905 So.2d 1088 (2005)
Charlie WHITE and Dorothy White
v.
Herbert ROGERS, Vada Rogers and B & S Builders, Inc.
No. 04-CA-1434.
Court of Appeal of Louisiana, Fifth Circuit.
April 26, 2005.
*1089 Charlie and Dorothy White, Marrero, LA, for Plaintiff/Appellant in Proper Person.
Kenneth J. Hurst, Marrero, LA, for Defendant/Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
The Plaintiffs, Charlie and Dorothy White, appeal from a judgment in favor of the Defendants, Herbert Rogers, Vada Rogers and B & S Builders, Inc. (B & S), in an oral contract dispute over the cost of a house renovation. We affirm.
In 1998, the Plaintiffs entered into an oral contract with the Defendants for the renovation of their home in Marrero, Louisiana, to include adding a master bedroom and bathroom, and remodeling an existing bathroom. The work on the addition was substantially completed two years later in June of 2001. In November of 2001, work began on the existing bath. At that time a dispute arose over a $900 bill. Herbert Rogers stopped work and the Plaintiffs hired others to complete the project.
On December 1, 2003, the Plaintiffs filed a petition pro se against the Defendants for breach of the oral contract, demanding damages representing the costs incurred to complete the renovations on the existing bathroom, and for reimbursement of $16,000, the total paid to the Defendants for constructing the additions. The Defendants answered the petition and filed a reconventional demand on January 23, 2003, demanding the balance of $900 owed for the remodeling work on the existing bathroom, plus a reasonable amount for Herbert Rogers' work and services. They also requested damages for sanctions, attorneys' fees, and costs for filing a frivolous lawsuit.
Subsequently, the Plaintiffs obtained legal counsel to represent them at trial and the case was tried before a judge on May 19, 2004. On May 20, 2004, the trial judge rendered a judgment, with reasons, in favor of the Defendants on their reconventional demand in the amount of $900, with legal interest from date of judicial demand until paid and all costs of court. The trial judge dismissed the Plaintiffs' claim and the Plaintiffs appealed. Thereafter, counsel for the Plaintiffs withdrew from the case. The Plaintiffs proceeded with the appeal pro se. They were also granted pauper status for the appeal.

PROCEDURAL DEFECTS
We note three problems with the appeal. First, the Plaintiffs filed an untimely motion for a new trial. Second, they were granted a suspensive appeal, which should have been converted to a devolutive appeal after they were granted pauper status. Third, the judgment that they appealed from does not exist.
The judgment on the merits was rendered on May 20, 2004 and notices of the judgment were sent on May 21, 2004. On July 8, 2004, the Plaintiffs, through their attorney, filed a motion for new trial from a judgment dated June 9, 2004 on the basis of newly discovered evidence. The motion for new trial was clearly untimely. *1090 See: La.C.C.P. art. 1974. In addition there is no judgment dated June 9, 2004. Also, on July 9, 2004, the Plaintiffs filed for a suspensive appeal from the "final judgment of June 9, 2004." The suspensive appeal was erroneously granted because no security was provided. In addition, shortly thereafter, the Plaintiffs moved for and were granted pauper status under La.C.C.P. art. 5181. As paupers, they cannot appeal suspensively, unless they provide security. See: C.C.P. art. 5185 B. However, the Plaintiffs are entitled to a devolutive appeal, which is timely, since the motion for appeal was filed on July 9, 2004, or within 60 days from the expiration of the 7 day delay for applying for a new trial (May 28, 2004.) See: La.C.C.P. art. 1974; C.C.P. art. 5185 A(4).
In addition, the Plaintiffs appealed from a judgment dated June 9, 2004, which does not exist. Nevertheless, since the Plaintiffs are pursuing the appeal pro se, are indigent and we can determine that they intended to appeal from the May 20, 2004 judgment, we will convert the appeal to a devolutive appeal and address the merits of the case.[1]

MERITS
The issue on appeal is whether the Plaintiffs are entitled to reimbursement of $16,575 representing the total amount paid for the renovations, including the addition of the master bed, bath, hall, and work on the existing bathroom. Also, the Plaintiffs dispute that the Defendants are entitled to recover the $900 for the work done on the existing bathroom. The Plaintiffs contend that the $16,575 included all work on both projects.
The evidence showed that Dorothy White and Vada Rogers worked together at the Jefferson Parish school board for 20 years. In 1997, when the Plaintiffs first contemplated renovating their family home, Dorothy White mentioned the project to Vada Rogers, whose husband, Herbert Rogers, owns and operates B & S, a construction company. According to Dorothy White, Vada Rogers advised her to obtain some estimates. In 1997, the Plaintiffs obtained an estimate from Hill's Construction (Hill's) for $9,870 and Renovations Plus Construction Co. (R.P.C.C.) for $32,000. Dorothy White claimed that Vada Rogers obtained this second estimate on the Plaintiffs' behalf and that both estimates included the addition of a master bedroom and bathroom and renovation of an existing bathroom. However, Vada Rogers testified that the Plaintiffs obtained the estimates and that she did not see the Hill's estimate obtained by the Plaintiffs until the day of trial. Nevertheless, when Vada Rogers saw the R.P.C.C. estimate, she told Dorothy White it was too high and offered to investigate whether her husband could perform the job for less. Thus, the women went to the Plaintiffs' house and Dorothy White showed Vada Rogers what she wanted done. She said she wanted to add a bedroom and bathroom and have the existing bathroom renovated. Charlie White was not present.
Vada Rogers testified that the job also included a walk-in closet, which the Plaintiffs did not mention in her testimony. Vada Rogers also said that they were to discuss the existing bathroom after the additions were completed. Vada Rogers said that they agreed that Herbert Rogers would perform the work at his cost, plus any amount that the Plaintiffs deemed fair *1091 for his profit. Dorothy White did not mention the "plus" portion of the contract at trial.
There is no dispute that the Plaintiffs hired Herbert Rogers, and deposited $8,000 into a joint account to pay expenses as they accrued, in accordance with Herbert Rogers' business policy. Any money left over would be returned to the Plaintiffs. The project to add the bed and bath began in December of 1999.
There was no written contract. The Plaintiffs claimed that they had asked for one in the beginning and Charlie White contended that he asked Dorothy White on several other occasions, as well, to obtain a written contract. Armond Sullivan, the Plaintiff's backyard neighbor, testified he overheard a conversation between Charlie White and Herbert Rogers about a written contract, but could not remember if it occurred in 1999 or 2001. However, Dorothy White stated when she asked Vada Rogers for a written contract, she was told that Herbert Rogers did not use written contracts in his business. She did not pursue the matter further because she did not know how these things were done and she trusted Vada Rogers, who purported to be a Christian lady and her friend.
Vada Rogers testified that there was no written contract, both because Herbert Rogers was doing this for a friend and did not think a contract was necessary, and because he never provides a written contract in his work as a building contractor. He rarely does renovation work. She also stated that when the Plaintiffs refused to pay the $900 for the existing bathroom remodeling costs, she went to the Plaintiffs' home and talked to them. At that time, Charlie White told her that he had repeatedly told his wife to get a contract, but Dorothy White never raised the subject with her.
During the course of the project from 1999 through 2001, most of the discussions, decisions, and finances related to the job were handled by the two women. Dorothy White said that during 2000, she complained to Vada Rogers about the delay in completing the addition and in finishing the renovations to the existing bathroom. She continued to pay the expenses as they accrued because she wanted her house back to normal and the work finished. When questioned about the delay, she claimed that Vada Rogers told her that her husband would "get to it" when he had time. Despite the delay, the Plaintiffs did not stop work on the job, even though the Plaintiffs could not sleep in their bedroom because the outside wall was removed during the construction of the additions. Although Dorothy White testified that she was dissatisfied with the work as early as April of 2000, she admitted that progress was made on the additions during that time.
Vada Rogers disputed Dorothy White's testimony in this regard. She contended that the Plaintiffs never complained about the work and that if they had, she or her husband would have attempted to resolve any problems. In addition, she testified that the Plaintiffs knew and accepted the fact that Herbert Rogers was doing this project as a favor for a friend at his cost, while continuing to build other houses. That is why the building permit for the Plaintiffs' construction was obtained in 1998, but construction did not start until 1999.
Dorothy White did not consider the job complete in June of 2000. She stated that the air conditioning unit had yet to be framed, the tub had a chip in it, the toilet leaked, the cabinet knobs were missing and there was no towel rack in the bathroom.
*1092 Vada Rogers disagreed. She stated that the work on the additions was completed in June of 2000, at which time that project had been fully paid for by the Plaintiffs. Vada Rogers noted that the Jefferson Parish regulatory board released the construction as completed in June of 2000. Vada Rogers noted that the regulatory board requires everything to be completed before it will "release" the property. Neither Vada nor Herbert Rogers knew about any problems with the air conditioner in the bathroom addition until the dispute arose in 2001. At that point, they discovered that the Plaintiffs had purchased a unit that was larger than the initial hole and that they removed the framing. Herbert Rogers intended to fix it, but when the Plaintiffs refused to pay the last bill, he did not return.
Dorothy White stated that no work on either project was done from June, when the main project was basically finished, through November of 2000, when she paid an additional $2,000 to B & S. However, she later claimed some work was done during that time. According to her, in November of 2000, she gave Vada Rogers a check for $2,000 because Vada Rogers asked her for more money. Dorothy White said that she asked what the money was for, but Vada Rogers told her that she would give her the receipts when the job was finished. Dorothy White denied that the $2,000 represented fair compensation or profit.
Vada Rogers testified that the check was for profit, not for construction costs, agreed upon by the parties. Vada Rogers claimed that Dorothy White knew that the check requested was their profit, and in fact, had told Vada Rogers that she had to wait to pay the $2,000 until she received some money that she was expecting, which occurred in November of 2000.
No further work was done until November of 2001. In the summer of 2001, Dorothy White testified that she asked Vada Rogers if Herbert Rogers was going to finish the work on the existing bathroom. She claims that Herbert Rogers said that he would do it later in the year, because it was too hot to work during the summer. After he started working on the bathroom, Vada Rogers requested another $1,500 from the Plaintiffs. They deposited $575 of that, but refused to pay the last $900, because they believed that the cost of the bathroom was or should have been included in the total amount already paid. The Defendants did not agree with that conclusion and Herbert Rogers stopped the work. At that stage of the project, the commode and light fixtures had not yet been installed and the electricity was off. When the parties were unable to come to any agreement about the $900, the Plaintiffs purchased fixtures and hired an electrician and other workers to finish the job.
In addition, although Dorothy White testified that she was not given any input as to what materials or items were used in the job, she admitted that, except for the disputed areas, she was satisfied with the work in the bedroom and additional bathroom. Vada Rogers disputed the claim that Dorothy White had no input. Vada Rogers testified that Dorothy White picked out her carpet and the color of the vinyl siding on the house. She did not pick out the color of the roof shingles, because Herbert Rogers had to match it with the original.
Dorothy White said that she retired from her job with the school board after the dispute arose and she did not hear from the Defendants again until after the Plaintiffs filed a complaint with the District Attorney.
Charlie White testified that he thought that the remodeling of the existing bath *1093 room was included in the original project, based solely on what his wife told him. He also said that he wanted to stop the work on the addition after the $8,000 was expended because only the slab and framing had been done. But, his wife told him that Vada Rogers assured him that Herbert Rogers was going to finish it. Charlie White said he complained about the how long the job was taking and unsuccessfully tried to get his wife to demand to see where the money was going. However, he never contacted either Vada or Herbert Rogers about the time delay or the expenditures. He also never sought other opinions as to what the job should cost. He admitted that Vada Rogers came to the house at the end of the job and showed him the invoices and a breakdown of the costs of the project, but he was not interested in seeing them at that time.
The Plaintiffs claimed that they paid a total of $16,575 in certified checks for the entire project. Dorothy White produced copies of all but one check that she obtained from the bank. The copies showed payments on April 27, 2000 of $2,000, May 9, 2000 of $1,000, November 30, 2000 of $2,000, and November 16, 2001 of $575. She could not find the copy of one other check for $2,000. The checks were made out to Vada Rogers. Dorothy White did not withdraw any money from the account. Dorothy White claimed she and her husband should recover the full $16,575 paid to the Defendants, because Vada Rogers lied to her.
Anthony Richard, the electrician hired to complete the electrical work in the remodeled bathroom, testified that he installed the heater/fan light for a charge of $75. In addition, the Whites produced receipts showing payments to Danny Noel of $475, dated March 12, 2002, for work he did to finish the existing bathroom, a receipt for $84 to Prestige Marble that spent in 1998 for the vanity top in anticipation of the renovation to the room, and $690 to Marble Top paid in March of 2000 for the bathtub and an alcove with trim that was related to the existing bathroom. Marble Top completed the installation of the vanity and tub. Dorothy White stated that her husband also helped complete the bathroom. Neil Marsh, another neighbor, did some plumbing on the existing bathroom that was remodeled, but was unable to remember the cost of his work.
The Jefferson Parish building permit, introduced into evidence, states that the estimated value of the work was $9,600. Dorothy White did not know who provided that information to Jefferson Parish and denied ever seeing it or knowing that it had been placed in a window of her home. Vada Rogers testified that she had never seen this document prior to trial. Herbert Rogers testified that the estimated construction cost on the building permit was not related to anything that he told Jefferson Parish, and is not a real price, but a way to assess the price of the permit.
Vada Rogers testified that the after the job commenced on the addition to the house, the parties decided to tear out a wall between the existing bedroom and the new construction, which added to the cost of that part of the project. The payments made to the subcontractors by Vada Rogers and her expense records were introduced in conjunction with her testimony. She showed that the construction of the master bedroom, new bathroom, closet and the wall demolition cost approximately $12,781.69. That included a slab, aluminum siding, roofing, labor, supplies and materials. She stated that Dorothy White did not hesitate to advance the funds as needed. Although she asked Dorothy White several times over the course of the construction if she wanted to see the receipts and invoices, Dorothy White declined. *1094 Although the Plaintiffs claimed that they paid the Defendants $16,000 by June of 2000, Vada Rogers contended that she only received a total of $14,781.69, and that the total included the $2,000 paid in November of 2001.
Vada Rogers stated that when her husband started work on the existing bathroom on November 27, 2001, no new agreement was discussed, but everyone assumed it would be done on the same basis as the other work. When the renovation of the existing bathroom began, Dorothy White gave her $575 to put into the account to start the construction. Vada Rogers stated that Dorothy White knew that this was for the work on the existing bathroom. Vada Rogers stated that it cost $150 to tear out the existing bathroom, $550 for plumbing work, and $900 for hanging, framing, texturing, and painting the sheetrock. When the bank account was depleted, Vada Rogers paid $900, the bill for the sheetrock work, from her account. She then requested reimbursement from the Plaintiffs. Her check to Robert LeBlanc for the sheetrock work was admitted into evidence. In response to the Plaintiffs refusal to pay the $900, Vada Rogers told them that the bathroom work could not have been included in the original payments because only $200 was left in the joint account after the addition was completed and $200 would not have covered the cost of renovating the existing bathroom. Thus, the Plaintiffs had to know that the bill was for the new work. When the Plaintiffs continued to refuse to pay, the Defendants decided to not pursue the issue since both women were about to retire. She noted that she and her husband had been in the construction business for 25 years and that she had no intent to deceive the Plaintiffs about the projects' costs.
Herbert Rogers testified that neither Dorothy nor Charlie White complained to him or asked him to do something that he failed to do during the renovations/remodeling projects. The first complaint made to him was when they refused to pay him for the work being done on the existing bathroom. Furthermore, he never saw the estimates that the Plaintiffs obtained from Hill's and R.P.C.C. and never agreed to do the job for $9,800. In support of the reasonableness of his bill, Herbert White pointed out that the Hill's estimate was not comparable to the work he performed. The Hill's estimate was for a smaller addition, 5 by 18 feet, whereas the addition that he built was 12 feet by 18 feet, and included a hallway. The added square feet and wall work cost more than the work in the Hill's estimate. Herbert Rogers also stated that the R.P.C.C. estimate for $32,000 was comparable to the actual work that Herbert performed.
Under La.C.C. art. 1846, one witness and other corroborating circumstances is necessary to prove an oral contract for a price in excess of $500. Peter Vicari General Contractor, Inc. v. St. Pierre, 02-250, p. 9 (La.App. 5th Cir.10/16/02), 831 So.2d 296, 301. Only general corroboration is required and it is not necessary that plaintiff offer independent proof of every detail. Id. The manifest error standard of review applies to a factual finding by the trier of fact in this regard and will not be overturned unless it is clearly wrong. Vicari, 02-250 at 9, 831 So.2d at 301.
On appellate review, the court's function is to determine whether the findings of the trier of fact were clearly wrong or manifestly erroneous. Brown v. Seimers, 98-694, p. 6 (La.App. 5th Cir.1/13/99), 726 So.2d 1018, 1021, writ denied, 99-0430 (La.4/1/99), 742 So.2d 556; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there *1095 is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Rosell, 549 So.2d at 844. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether its conclusion was a reasonable one. Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Stobart, 617 So.2d at 882. Only where the documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, may the court of appeal find manifest error, even in a finding purportedly based upon a credibility determination. Brown, 98-694 at p. 7, 726 So.2d 1018 at 1021; Rosell, 549 So.2d at 844-45.
In this case, there were two permissible views of the evidence. The Plaintiffs interpreted their agreement to include the work on the existing bathroom in the original payment based on the Hill's estimate and the discussion between the parties at the walk-through of the house. They claim that they paid the Defendants over $16,000 before the work started on the existing bathroom. The Defendants, on the other hand, believed that the existing bathroom remodeling was a separate job to be negotiated after the addition was completed. They claimed that the Plaintiffs paid approximately $14,000 before the work started on the second bath. Either is a permissible version of the events and may have arisen from a misunderstanding between the parties because there was no written agreement or estimate. However, when the original $8,000 advanced by the Plaintiffs was spent and Vada Rogers continued to ask for funds that exceeded the amount of the Hill's estimate, the Plaintiffs did not question the expenditures, stop the work or obtain an accounting. Furthermore, there was a long interval between the substantial completion of the addition and commencement of the work on the existing bathroom, the initial estimate for the additional bedroom and bathroom from Hill's was for a smaller structure than was actually built, and the actual addition tracked the square footage of the R.P.C.C. estimate for $32,000. These facts, coupled with Herbert Rogers' agreement to do the job at his cost, leads to a reasonable conclusion that the $14,000 or $16,000 paid to the Defendants did not include the costs for the remodeling of the existing bathroom. Since there are two permissible views of the evidence here, the trial judge's choice between them cannot be manifestly erroneous or clearly wrong. See: Brown, 98-694 at p. 6, 726 So.2d 1018 at 1021; Stobart, 617 So.2d at 882.
In addition, Vada Rogers' records support the expenditures for both jobs. Thus, there are no documents or objective evidence that so contradict her testimony and the Defendants' version of the events is not so internally inconsistent or implausible on its face that a reasonable factfinder would not credit their story. Thus, we find that the trial judge's factual findings were not manifestly erroneous in this case.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of appeal are assessed to the Plaintiffs.
AFFIRMED.
NOTES
[1] We also recognize that the appeal brief does not conform to the Uniform Rules of the Courts of Appeal, but will address the issues without ordering supplementation due to the Plaintiffs' pro se and pauper status, because the Defendants have not complained, and because we are able to easily determine the issues in the case.